Joseph DE FILIPPIS et al.,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 77–1411.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1977.

Decided Dec. 5, 1977.

Thomas P. Sullivan, U. S. Atty., James T. Hynes, Asst. U. S. Atty., Chicago, Ill., for defendant-appellant.

Russell C. Green, Chicago, Ill., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and PELL, Circuit Judges.

SWYGERT, Circuit Judge.

The single issue in this appeal is whether the district court abused its discretion in denying defendant's Rule 60(b) motion to vacate the permanent injunction entered against it. For the reasons set forth below, we find the district judge properly exercised his discretion, and therefore affirm the judgment.

This proceeding began on January 9, 1974 when plaintiffs, members of the Marine Air Reserve, filed a complaint against the United States Marine Corps. Plaintiffs alleged that their constitutional rights were violated by defendant's policy prohibiting reservists from wearing short hair wigs to cover long hair while attending annual active training duty (summer camp).[1] Following an evidentiary hearing, the district court granted plaintiffs' request for a preliminary injunction. *De Filippis v. United States,* 370 F.Supp. 82 (N.D.Ill.1974). On October 30, 1974, after another hearing, the court permanently enjoined the Marine Corps from enforcing its no-wig regulation against plaintiffs. This injunction was issued after the district court had determined that any legitimate governmental interest in the regulation was outweighed by its infringement of the reservists' personal liberties. No appeal was ever taken from this order.[2]

On April 5, 1976, the United States Supreme Court decided *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 408 (1976), which upheld the validity of police department hair grooming standards similar to those of the Marine Corps. As part of its decision, the Court held that the burden was not on the Government to justify the regulation, but rather that the burden was on the plaintiffs to demonstrate the absence of rational connection between the regulation and its purported purpose. *Id.* at 247, 96 S.Ct. 1440.

Six months after *Kelley* was decided, the Marine Corps moved pursuant to Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure to vacate the district court's earlier order, stating that "because of the recent Supreme Court ruling in the case of *Kelley v. Johnson,* . . . it would be inequitable to continue to enforce the permanent injunction . . . ." The Government specifically argued that *Kelley* had changed the law concerning the burden of proof, *i. e.,* the burden should have initially been placed on plaintiffs to show no rational basis. The Government, however, neither filed affidavits nor offered testimony showing how continued enforcement of the injunction was inequitable. The district court denied the motion to vacate on January 24, 1977.

I

We begin our analysis by recognizing that a Rule 60(b) motion to vacate is not a substitute for an appeal. *Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Flett v. W. A. Alexander & Co.,* 302 F.2d 321, 324 (7th Cir.), *cert. denied,* 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed.2d 77 (1962). Rule 60(b) provides for extraordinary relief. Because of the interest in finality of judgments, Rule 60(b) requires a showing of exceptional circumstances or a grievous wrong evoked by new and unforeseen conditions. *Ben Sager Chemicals International, Inc., v. E. Targosz & Co.,* 560 F.2d 805, 809 (7th Cir. 1977);

1. The complaint also challenged defendant's policy of prohibiting reservists from wearing short hair wigs while attending monthly drills. Shortly after the complaint was filed, the Commandant of the Marine Corps announced a change in policy allowing short hair wigs at monthly drills. This change did not affect the prohibition of such wigs at summer camp.

2. The Government did file a notice of appeal in the district court, but withdrew the appeal voluntarily before it was docketed in this court.

*Securities and Exchange Commission v. Advance Growth Capital Corp.,* 539 F.2d 649, 652 (7th Cir. 1976). Appellate review of a denial of a Rule 60(b) motion is limited to determining whether the district court abused its discretion. *Ben Sager Chemicals, supra* at 809; *Beshear v. Weinzapfel,* 474 F.2d 127, 130–31 (7th Cir. 1973).

Relief under Rule 60(b) is limited to one of the six grounds specified in the rule.[3] *Lubben v. Selective Service System,* 453 F.2d 645, 649 (1st Cir. 1972). In this case defendant moved to vacate the injunction both under Rule 60(b)(5), allowing relief from the inequitable prospective application of a judgment,[4] and Rule 60(b)(6), the residual clause allowing relief for "any other reason justifying relief." A review of these subsections reveals that neither supports the Government's contentions.

**3.** Rule 60(b) provides in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

**4.** The second clause of subsection (b)(5) of Rule 60 contains language which initially seems to support the Government's claim for relief because of a change in the law. That clause provides for relief from a final judgment when "a prior judgment upon which it was based has been reversed or otherwise vacated . . . ." This clause does not help the Government here because *Kelley v. Johnson* cannot be considered a "prior judgment" and therefore it cannot be said that the order granting the injunction in the instant case "was based" on *Kelley.* As the First Circuit observed concerning this clause:

For a decision to be "based on" a prior judgment within the meaning of Rule

## II

The Government's claim under Rule 60(b)(6) can be disposed of easily. It must first be noted that (b)(6) is separate from and exclusive of the other five grounds specified in Rule 60(b). *Ben Sager Chemicals,* 560 F.2d at 810 n. 3; *Bershad v. McDonough,* 469 F.2d 1333, 1336 n. 3 (7th Cir. 1972). *See Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 93 L.Ed. 266 (1949). As the Government here invokes subsection (b)(5), it cannot also claim relief under (b)(6).[5]

## III

The question then is whether the Government has met its burden of demonstrating under Rule 60(b)(5) that inequity results from continued enforcement of the injunction.[6] This provision does not allow

60(b)(5), the prior judgment must be a necessary element of the decision, giving rise, for example, to the cause of action or a successful defense. . . . It is not sufficient that the prior judgment provides only precedent for the decision.

\* \* \* \* \* \*

[A] change in applicable law does not provide sufficient basis for relief under [Rule] 60(b)(5). *Lubben v. Selective Service System,* 453 F.2d 645, 650 (1st Cir. 1972).

**5.** The Government's claim under (b)(6) would nevertheless fail for two additional reasons. First, courts are generally agreed that a change in the law after entry of judgment does not alone justify relief under (b)(6). *See, e. g., Title v. United States,* 263 F.2d 28, 31 (9th Cir. 1959); *Collins v. City of Wichita,* 254 F.2d 837, 839 (10th Cir. 1958); *Berryhill v. United States,* 199 F.2d 217, 219 (6th Cir. 1952). Second, the failure of the Government here to prosecute an appeal has generally been held to bar relief under Rule 60(b)(6). *See Ackermann v. United States,* 340 U.S. 193, 197, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Lubben v. Selective Service System,* 453 F.2d 645, 651 (1st Cir. 1972). *But see Polites v. United States,* 364 U.S. 426, 433, 81 S.Ct. 202, 5 L.Ed.2d 173 (1960).

**6.** In its brief and at argument, the Government seemingly misconstrued who had the burden of proof in this case. It continually argued that under *Kelley,* plaintiffs had the burden. That might be so if this were an appeal from the entry of the original injunction. *See* n. 7 *infra.* But the Government, as the moving party, had the initial burden to show the inequity of continued application of the injunction.

relitigation of issues that have been resolved by the judgment. Rather, it requires a change in the conditions that makes continued enforcement inequitable. 11 *Wright & Miller, Federal Practice* § 2863 (1973). As Mr. Justice Cardozo stated in *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932):

> There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, *whether right or wrong,* is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting. (emphasis added.)

A strong showing must be made before an injunction will be modified or vacated.

> No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. *Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions* should lead us to change what was decreed after years of litigation . . . . *Id.* (emphasis added.)

The Government here has not met its burden of proof. Indeed, it has made *no* showing of how continued enforcement of the injunction works an injustice *or* constitutes a "grievous wrong." It offered no testimony, filed no affidavits; it only cited *Kelley v. Johnson.* The *Kelley* decision, even if applicable,[7] was not by itself such a subsequent event as to render inequitable continued application of the injunction.

We will not blindly apply the principle of finality when to do so will *cause injustice.*

On the other hand, there must be an end to litigation someday. Absent a clear showing of grievous wrong, judgments will not, and cannot, be opened.

The order of the district court is affirmed.

PELL, Circuit Judge, dissenting.

This litigation demonstrates, in my opinion, the correctness of Justice Jackson's observation that "judges are not given the task of running the Army." [1] By not heeding this admonition, and by virtue of a 1974 judicial decision which appears palpably incorrect in the light of *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 408 (1976), which 1974 decision this court is leaving undisturbed despite *Kelley v. Johnson,* the United States Marine Corps, rather than legitimately exercising its discretion in controlling the appearance of its troops, maintaining discipline, and instilling into the individual, whether he be active or reserve, the esprit de corps that is in the tradition of the Marine Corps,[2] now finds itself perpetually locked-in to a judicially created rule prescribing, despite the Corps' judgment to the contrary, aspects of the "running" of the armed forces. Being of the opinion that the district court in the decision presently under review abused its discretion in not granting the Rule 60(b) motion, I respectfully dissent.

I do not quarrel with the numerous cases holding that Rule 60(b) was not intended as, and it is not, a substitute for a direct appeal from an erroneous final judgment. But we are not being asked here to engage in "unscrambling the past," but rather we are asked to deal with the *prospective* application of an injunction and relief under 60(b)

---

7. It is not clear whether *Kelley* would have even applied to this case as there are significant factual differences. For example, petitioners in *Kelley* challenged the authority to issue hair regulations whereas the reservists here only challenge the prohibition against use of short hair wigs to comply with admittedly valid hair regulations. Further, petitioners in *Kelley* were full-time policemen, whereas the

reservists are primarily private citizens, spending only one month per year in active duty.

1. *Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).

2. *See Martin v. Schlesinger,* 371 F.Supp. 637, 641 (N.D.Ala.1974).

should be available for this.[3] Thus, in *Elgin Nat. Watch Co. v. Barrett,* 213 F.2d 776 (5th Cir. 1954), the court while reversing the district court insofar as that court had vacated under Rule 60(b) a final, non-appealed judgment, nevertheless affirmed that portion of the judgment which had relieved parties from the prospective effect of the permanent injunction. This differentiation between the past and prospective aspects of a judgment is recognized in Rule 60(b) which provides in pertinent part for relieving a party from final judgment where "it is no longer equitable that the judgment should have prospective application."

The majority opinion quotes from Justice Cardozo's opinion in *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). The famed Justice also, however, in the same opinion, expressed no doubt as to the inherent power of a court of equity to modify an injunction in adaptation to changed conditions even though the decree was a consent one. Writing before the adoption of the Federal Rules of Civil Procedure, and the explicit authorization of Rule 60(b)(5), Justice Cardozo stated that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id.* at 114, 52 S.Ct. at 462. The Justice then made the distinction which it appears to me is significant in the litigation before us:

> The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. [*Id.* at 114, 52 S.Ct. at 462.]

In *Swift,* Justice Cardozo then examined the litigation before the Court and concluded that it was brought within the first prong of the quoted distinctions, concluding the opinion:

> What was then solemnly adjudged as a final composition of an historic litigation

will not lightly be undone at the suit of the offenders, and the composition held for nothing. [*Id.* at 120, 52 S.Ct. at 464.]

I have extreme difficulty in finding these words to be appropriate to a 1974 injunction curtailing the Marine Corps from enforcing its rule regarding appearance of its personnel at summer camps.

Pertinent here is the case of *Coca-Cola Co. v. Standard Bottling Co.,* 138 F.2d 788 (10th Cir. 1943), as reflective upon the inherent power and duty of an equity court to respond to changed conditions including recognition of court decisions indicating the legal incorrectness of the challenged injunction. The defendant in that case in 1925 had consented to a decree enjoining it, *inter alia,* from using the word "cola" in connection with any non-Coca-Cola beverages. The court noted that conditions had changed greatly since 1925 including the fact that "[u]nder numerous decisions in many courts, it has been held that appellant has no exclusive right to the use of the word 'cola' standing alone or to any combination including the word 'cola', except its own trademark of Coca-Cola." *Id.* at 790. The court, in effect, finding that the changes were important enough to warrant modifying the decree, affirmed the district court which had done so.

The same result was reached in *Theriault v. Smith,* 523 F.2d 601 (1st Cir. 1975). A consent decree had been entered in 1974 granting AFDC benefits to the plaintiffs. The court observed that a subsequent Supreme Court case had represented a fundamental change in the legal predicates of the consent decree and stated, "[i]t may well be unreasonable to require defendant, for the indefinite future, to abide by a consent decree based upon an interpretation of law that has been rendered incorrect by a subsequent Supreme Court decision." *Id.* at 602. In affirming the vacation of the decree, the First Circuit found the result in equity consistent with Justice Cardozo's pronouncements in *Swift, supra.*

---

3. *See Bros. Incorporated v. W. E. Grace Manufacturing Company,* 320 F.2d 594, 610 (5th Cir. 1963).

Turning now again to *Kelley v. Johnson,* I note that the majority opinion in a footnote expresses a query as to whether *Kelley* would even have applied to this case because of factual differences. The primary factual difference between the cases, it appears to me, is that *Kelley* involved a civilian organization while the present case involves the military forces, a difference which causes me to think that *Kelley* is applicable to the present case on an *a fortiori* basis. In *Kelley,* the Court twice adverts to the implicit rejection by the Second Circuit to uniformed civilian services being subject to the same hair regulations that the military services are. 425 U.S. at 241 and 246, 96 S.Ct. 1440, 1445. The Court in the second instance apparently found no fault in a reference to the " 'unique judicial deference' accorded by the judiciary to regulation of members of the military." That deference is lacking in the case before us.

The principal significance, in any event, of *Kelley* is the underlying rationale of the presumptive validity of regulations such as the one to which the plaintiffs object. The majority opinion states correctly that the Court held in *Kelley* that the burden was not on the Government to demonstrate the absence of rational connection between the regulation and its purported purpose. Yet without any recognition of the existence of the presumption, and without any countering evidence to overcome the presumption, the district court in ruling on the Rule 60(b) motion declined to set aside the injunction prospectively notwithstanding the mandate of *Kelley* that "[t]he constitutional issue to be decided by these courts is whether [the military's] determination that such regulations should be enacted is so irrational that it may be branded 'arbitrary.' " *Id.* at 248, 96 S.Ct. at 1446.

I cannot conclude this dissent without referring to the rather ironic aspect of this case that the branch of the military service here involved is the one which is commonly known as the one with the most stringent disciplinary standards, as well as having a unitary loyalty and esprit de corps superior to the other branches. As the Government observed in its reply brief, correctly I believe, "[f]or career Marines, or other Reservists at summer camp, to see these Reservists wearing short hair wigs, while they themselves cut their hair to the required length, is obviously an effect on morale and discipline. And it is precisely that morale and discipline problem which the government seeks to avoid."

I would reverse and remand with direction to vacate the injunction as to any prospective application.