Leon WHITE, et al.,
Plaintiffs-Appellants,

v.

C. Vaughn ROUGHTON, et al.,
Defendants-Appellees.

No. 81–2971.

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1982.

Decided Sept. 9, 1982.

Rehearing and Rehearing En Banc
Denied Nov. 9, 1982.

George Bell, Land of Lincoln Legal Assistance, Champaign, Ill., for plaintiffs-appellants.

Gregory E. Pelini, Urbana, Ill., for defendants-appellees.

Before ESCHBACH, POSNER and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

The township of Champaign, Illinois has a program called "General Assistance" by which it provides money to poor people out of its tax revenues. This appeal arises out of a class action that was brought under 42 U.S.C. § 1983 against officials of the township on behalf of recipients of and applicants for General Assistance, alleging that the township's failure to promulgate written standards of eligibility, and to give applicants whose applications are denied reasons for denial, violated the rights of the class members under the due process clause of the Fourteenth Amendment. The complaint sought both injunctive relief and back payment of benefits.

The district judge denied a preliminary injunction and the plaintiffs appealed to this court, which reversed, holding that the plaintiffs were likely to prevail at trial. See *White v. Roughton*, 530 F.2d 750 (7th Cir. 1976). The parties then negotiated a consent decree which was approved by the judge. The decree does not require the payment of any benefits retroactively but it does require the township to give applicants for General Assistance written notice of, and reasons for, denial of any application; entitles an applicant to a timely evidentiary hearing if his application is denied; and requires the township to promulgate "published, consistent standards governing eligibility." In implementation of the requirement of "published, consistent standards," paragraph 9 of the decree provides that the township, "to insure protection of these constitutional rights and to comply with *Goldberg v. Kelly*, [397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970),] and *White v. Roughton, supra*," shall be required to administer General Assistance "including but not limited to application procedures, eligibility requirements, appeal procedures, and amounts and categories of assistance in accordance with the public written standards adopted by the [township]; *the standards shall from this day forward be substantially in compliance with the standards adopted pursuant to this settlement and attached hereto as Exhibit 2.*" (Emphasis added.) Exhibit 2 includes a provision which is captioned "Emergency Assistance" and which reads in pertinent part: "Emergency assistance for basic maintenance shall be provided when necessary for an applicant's or recipient's health and well-being."

■ More than four years after the decree was entered the township's board of trustees repealed the ordinance under which Emergency Assistance is provided. The plaintiffs, claiming that this repeal was contrary to the clause in the decree that we have italicized, petitioned the district court for an order holding the township and its officers in civil contempt of the decree. The district court (a different judge from the one who had approved the decree) held that the repeal of emergency assistance did not violate the decree and dismissed the petition, and the plaintiffs have appealed. The dismissal of the contempt petition was a final order, appealable to this court under 28 U.S.C. § 1291, and the appeal properly brings up to us the question of the meaning of the consent decree. See, e.g., *Sportmart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 315–16 (7th Cir. 1979).

■ It is quite true, as the plaintiffs argue, that the italicized clause, standing alone, requires the township to adhere, at least substantially, to the standards set forth in the exhibit to the decree, and that the repeal of emergency assistance is not substantial compliance. But it is not true that we must read one clause in one paragraph of the decree in isolation from the rest of the paragraph and the rest of the decree without reference to the decree's evident purpose. We accept unreservedly the statement in *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) (emphasis in original), that a consent "*decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other; and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." But this language must be read in context—the context of a government antitrust decree that the government was asking the court to interpret in accordance with the purpose that had moved the government to bring the suit that the decree had settled. We do not understand the Supreme Court to be saying that consent decrees should be interpreted as if their provisions were unmotivated, purposeless, and without context or that the "four corners" of the decree are really the "four corners" of each clause in the decree. The Court was saying that the relevant purposes in interpreting a consent decree (like any other contract) are the purposes embodied in the instrument rather than the maximum aspirations—which are bound to

be inconsistent anyway—of the interested parties.

Any doubts about this interpretation of *Armour* should have been dispelled by *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975), which states that "a consent decree or order is to be construed for enforcement purposes basically as a contract," so that "reliance upon certain aids to construction is proper, as with any other contract." (The suggestion by the dissenting Justices in *ITT Continental* that the majority opinion departs from the standard of *Armour,* see 420 U.S. at 247–48, 95 S.Ct. at 939–40, overlooks, it seems to us, the difference between giving effect to the purpose of just one of the parties to the consent decree and giving effect to the parties' joint purpose imprecisely embodied in the language of the decree.) See also this circuit's decisions in *Sportmart, Inc. v. Wolverine World Wide, Inc., supra,* 601 F.2d at 316–17, and *Commodities Futures Trading Comm'n v. Premex,* 655 F.2d 779, 782 (7th Cir. 1981).

Nor do we agree with the plaintiffs that interpretation is permissible only if the language of the decree is ambiguous. *Sportmart* does not support that proposition. We said there that "the ambiguity of the decree's application to the present case is plain and resort to the circumstances surrounding the formation of the consent decree in order to construe its terms, *if ambiguity be necessary at all before resort to such extrinsic aids,* is proper." 601 F.2d at 317 (emphasis added). This formulation leaves open for another day—this day—the question whether it is permissible to construe unambiguous language where construction is necessary to determine the intended rather than the literal meaning of the decree. The proposition advanced by the plaintiffs would be correct if we were construing a common carrier's tariff rather than a decree in the nature of a contract. See *Western Transport. Co. v. Wilson & Co.,* 682 F.2d 1227, 1231 (1982). But the overriding purpose in construing a contract is to give effect to the mutual intent of the parties at the time the contract was made; and while the language of the contract is normally the best evidence of that intent, a court can properly disregard even unambiguous language when it is convinced that the parties meant something different from what they said. "The purposes of the parties to a contract are not always identical; ... the parties often have divergent or even conflicting interests. But up to a point they commonly join in a common purpose of attaining a specific factual or legal result which each regards as necessary to the attainment of his ultimate purposes.... Determination that the parties have a principal purpose in common requires interpretation, but if such a purpose is disclosed further interpretation is guided by it. *Even language which is otherwise explicit may be read with a modification needed to make it consistent with such a purpose.*" 2 Restatement (Second) of Contracts § 202, comment *c* (1981) (emphasis added); see also 2 *id.* § 212, comment *b.*

The plaintiffs' further argument that "no words [in a consent decree] should be rejected for lack of meaning or surplusage" rests on the unrealistic premise that all legal instruments are drafted with complete economy of language. The people who draft contracts and consent decrees are fallible like the rest of us and often fail to express their agreement with precision. They take a terrible risk when they do this, but if a court can figure out what they meant but failed to say, it has the power and the duty to give effect not to the words but to the intentions behind them—always supposing that these are the joint intentions of the parties at the time the contract was made or the decree formulated and not just the secret intention of one of the parties. There is "useless surplusage" in contracts as in statutes, *J.C. Penney Co. v. Commissioner of Internal Revenue,* 312 F.2d 65, 72 (2d Cir. 1962), and in neither context should a court give effect to it.

We have said that the italicized clause in paragraph 9, read literally, requires the township to adhere to the published standards attached to the decree and we understand how delighted the plaintiffs would have been to have gotten such a duty into the decree. But we do not believe that

the parties meant to include it. The only issue in the class suit was the township's adherence to proper procedures. The plaintiffs did not and could not claim a federal right to receive emergency assistance or any other form of poor relief from the township, see *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); and we doubt the township was so inept a bargainer that it gave the plaintiffs not only all the procedures they wanted but also substantive entitlements to which they had no possible claim. Paragraph 9 leads off with the statement that the requirements set forth in the paragraph are in order "to insure protection" of the constitutional rights listed earlier in the decree, all of which are procedural rights, and "to comply with" the *Goldberg* decision and this court's earlier decision in this litigation. Both of those decisions concerned procedural rather than substantive rights. Moreover, paragraph 9 does not even appear in the order portion of the decree, but in the conclusions of law that precede the actual order. The order states, so far as is pertinent to the issue in this case, that the township is "permanently enjoined from failing to apply consistent written standards for eligibility and the amount of assistance to be given to [the plaintiffs]. A copy of the standards adopted by [the township] pursuant to this settlement is attached hereto as Consent Decree Exhibit 2 and incorporated herein by reference." We do no violence to the meaning of these words by interpreting them as imposing on the township the obligation, not to adhere to the standards in Exhibit 2, but to apply "consistent written standards" of which the standards in Exhibit 2 are merely an illustration.

Although the plaintiffs argue that they gave up their claim to retroactive payment of benefits in exchange for substantive welfare rights, there is not a hint of such a swap in the decree. On the contrary, the notice of the proposed settlement of the class action, prepared by the plaintiffs' counsel, states that the township has "offered agreement to the entry of a permanent injunction and declaratory judgment requiring them to adopt and implement certain standards and procedures for administering general assistance, in return for Plaintiffs' waiver of all claims for retroactive benefits." These words suggest that it is the decree as a whole, not the freezing of welfare benefits at existing levels, that was the consideration for the plaintiffs' giving up their claims for retroactive benefits.

We doubt, moreover, that the township would have agreed to specific substantive entitlements without insisting that the decree contain a more flexible machinery for modification than is implied by the traditional principle—which the plaintiffs quote in their brief with seeming relish—that "nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932). Because a local township has only a limited ability to tax, commitment to a fixed level of benefits paid out of its tax revenues for the indefinite future could seriously imperil its fiscal health. Yet if paragraph 9 is read literally, the township made just such an improvident commitment.

It is pretty clear to us that paragraph 9 was just ineptly drafted and that what the parties meant to say was that the township would have to adhere in the future to written standards such as those in the exhibit, attached by way of example rather than mandate—not that it was committing itself forever to provide specific types or levels of poor relief. At least that must be our conclusion when the only evidence offered in the contempt proceeding by either party was the decree itself. The plaintiffs had the burden of proving that the defendants had violated the decree, yet they made no effort to introduce extrinsic evidence that might have supported a construction of the decree that seems, in the absence of any such evidence, unreasonable in light of the context and apparent purpose of the language they rely on.

We conclude that the township did not violate the consent decree by abandoning emergency assistance. The judgment of the district court refusing to hold the de-

fendants in contempt of the decree is therefore

AFFIRMED.