The INSTRUMENTALIST CO.,
Plaintiff-Appellee,

v.

MARINE CORPS LEAGUE and the United States Marine Youth Foundation, Inc., Defendants-Appellants.

No. 81–2895.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1982.
Decided Nov. 24, 1982.

James S. Gordon, Ltd., Chicago, Ill., for plaintiff-appellee.

Richard G. Lione, Hume, Clement, Brinks, Willian & Olds, Ltd., Chicago, Ill., for defendants-appellants.

Before ESCHBACH and COFFEY, Circuit Judges and DUMBAULD,* Senior District Judge.

---

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, is sitting by designation.

1. Neither the Marine Corps League nor the United States Marine Youth Foundation are directly affiliated with the United States Ma-

COFFEY, Circuit Judge.

This case is an appeal from an order of the District Court for the Northern District of Illinois, denying the defendants' motion to modify a certain band award certificate, the subject of earlier trademark litigation. In denying the motion the district court ruled that the defendants failed to set forth a valid reason for the proposed change, and further found that the certificate, as altered, would violate the terms of the Consent Decree. Affirmed.

The defendants-appellants, the Marine Corps League and the United States Marine Youth Foundation, Inc.,[1] the two organizations jointly offering the "Semper Fidelis" Band Award, assert that the district court abused its discretion in denying their motion to modify the "Semper Fidelis" Band Award certificate. The defendants argue that the district court misapplied the "confusingly similar" test and expanded upon the substance of the Consent Decree when it ordered the defendants to justify the alteration of their award. The defendants argue that the Consent Decree required the district court to limit its analysis to a "side-by-side eyeball" comparison of the defendants' "Semper Fidelis" Award and the Instrumentalist Co.'s John Philip Sousa Band Award when determining if the two awards were "confusingly similar." Alternatively, the defendants request that this court treat their motion to alter the "Semper Fidelis" Award "as having been filed under Rule 60(b)(5) of the Federal Rules of Civil Procedure and direct relief from prospective operation of the Consent Decree." Rule 60(b)(5) provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

\* \* \* \* \* \*

rine Corps, but both agencies work with the United States Marine Corps and seek to provide a link between present and former marines, to promote better citizenship among their members and to help former marines improve their capabilities as leaders in civilian life.

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . ."

It is the defendants' (the Marine Youth Foundation and the Marine Corps League) position that the district court's order underlying the Consent Decree "runs so contrary to any acceptable theory of trademark rights as to have heaped a gross inequity on [them] in the denial of their motion."

Since the facts giving rise to this litigation are more fully and completely set forth in *Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 325–27 (N.D.Ill. 1981), we will thus provide only a brief recitation of the pertinent facts which will aid in an understanding of the issues discussed herein.

The Instrumentalist Co., the plaintiff-appellee, is an Illinois corporation that publishes "The Instrumentalist," a national music magazine directed to high school music teachers, band and orchestra directors. In 1954, the Instrumentalist Co. received authorization from the family of the late John Philip Sousa to use Sousa's name and likeness on a band award, and beginning in 1955 and continuing to the present the Instrumentalist Co. has offered an award known as "The John Philip Sousa Band Award" for sale to high schools. In the 27 years since the Instrumentalist Co. first offered the Sousa Band Award for sale to high schools, the award has grown in prominence and importance in the musical community, and the annual distribution of the awards has now reached some 6,000 young musical scholars. Indeed, one band leader, Mr. Thomas Trimborn, testified that the John Philip Sousa Band Award was the most prestigious band award given and not-

ed that his receipt of the award was "one of the outstanding highlights of my musical career."

Once a high school decides to participate in the presentation of a Sousa Band Award, the high school's band leader may elect to purchase any or all of the following: a certificate with the name and picture of John Philip Sousa prominently displayed, a lapel pin and a marble desk piece each featuring the vertical relief of Sousa, and a wall plaque bearing Sousa's name and likeness. Over the years, the Instrumentalist Co. has maintained strict control over the John Philip Sousa Band Award, and has refused to sell more than one award to any one high school in any one year since the award is intended to recognize only the outstanding graduating senior band member in a particular high school.[2]

In 1966, Instrumentalist applied for a trademark registration of the depiction of John Philip Sousa, for any or all uses. The United States Patent Office denied the request for registration, ruling that Sousa's picture "constitutes merely the subject matter of the goods . . . . [I]t is not believed the picture functions as a trademark as defined in section 45 of the 1946 Trademark Act." In 1973, Instrumentalist again applied for federal patent registration, seeking a trademark on the use of the Sousa name, image and/or likeness and identifying the goods as "awards in the nature of plaques." The Patent Office approved the registration and issued a registration number.

In 1967, some 12 years after Instrumentalist created their award, the Marine Corps League and the United States Marine Youth Foundation jointly began to issue a Distinguished Musician Award to outstanding high school band musicians throughout

---

**2.** In rare instances where a band director has certified that a tie has occurred between two outstanding students of equal talent, Instrumentalist would sell two awards to that school for that year. Instrumentalist also requires that if the high school elects to award more than one of the Sousa Band Award items (the certificate, the desk piece and the lapel pin) the school must give all of the items to each band member chosen as an outstanding graduating senior having excelled in musical activities (i.e.

the United States.[3] However, in January, 1980, at the suggestion of retired Marine Corps General Walter Churchill, a director of the Marine Corps League's youth activities and a founder of the Youth Foundation, the defendants (the Marine Corps League and the Marine Youth Foundation) changed the name of their band award to the "John Philip Sousa Award for Musical Excellence," thus creating a conflict with Instrumentalist's trademark. Instrumentalist's president, upon learning that the defendants had changed the design and name of their award, sent General Churchill a letter objecting to the redesigning and renaming of the award, and asserted that the defendants were violating their trademark rights.

When General Churchill discovered that Instrumentalist objected to the newly named certificate on trademark grounds, he undertook to develop an award which would not conflict with Instrumentalist's registered trademark. After conferring with the United States Marine Corps Legal Counsel and the Navy Patent Council, General Churchill suggested altering the newly designed certificate by simply substituting "Semper Fidelis" for Sousa's name on the front of the certificate,[4] while retaining the multi-colored likeness of John Philip Sousa on the front of the certificate and further retaining the Sousa name and biography on the back. In June of 1980, the defendants issued and marketed this "Semper Fidelis" Award, described above, to graduating high school students.

When Instrumentalist discovered that the defendants had prominently featured Sousa's likeness on the front of the "Semper Fidelis" Award, they again objected and filed an action in the District Court for the Northern District of Illinois against the Marine Corps League and the United States Marine Youth Foundation alleging infringement of Instrumentalist's registered "John Philip Sousa" trademark. Instrumentalist moved for a preliminary injunction to enjoin the defendants from using the Sousa name or any prominent representation of Sousa including a picture or facsimile of Sousa or any representation of the image or name of John Philip Sousa in connection with the "Semper Fidelis" (or any) Band Award. The district court held a two and one-half day evidentiary hearing on Instrumentalist's motion for a preliminary injunction to determine whether Instrumentalist could establish the prerequisites for a preliminary injunction (i.e. the likelihood of success on the merits, the lack of an adequate remedy at law, the prospect of irreparable harm, and a comparison of the relative hardships imposed on the parties). Shortly thereafter, on February 6, 1981, the district court issued a Memorandum Opinion and Order granting Instrumentalist's motion for a preliminary injunction.[5]

The district court found that Instrumentalist had established a sufficient "likelihood of success on the merits," and noted that Instrumentalist's "John Philip Sousa" mark [6] was registered with the U.S. Patent Office, and that registration of that mark "shall be prima facie evidence of the validity of the registration . . . and of the registrant's exclusive right to use the mark." 509 F.Supp. at 328, citing *Miss Universe, Inc. v. Patricelli,* 408 F.2d 506, 509 (2nd Cir.1969). Moreover, the court found that Instrumentalist's mark protected the use of Sousa's "image" (used by Instrumentalist on the wall plaque, desk piece, certificates and lapel pins) because "words and their

---

it cannot divide these awards between one, two or three winners).

**3.** For an explanation of the defendants' purposes and their relationship with the United States Marine Corps, *see* note 1, *infra.*

**4.** "Semper Fidelis" was chosen as the new name for the certificate because it was the name of one of Sousa's most famous marches and because "Semper Fidelis" is the Marine Corps motto.

**5.** The defendants also had filed a motion for summary judgment, but because there "are clearly contested issues of material fact" the district court denied this motion. *See Instrumentalist Co.,* 509 F.Supp. at 328 n. 6.

**6.** The words "mark" and "trademark" will be used interchangeably and will, in all cases, refer to a trademark.

pictorial representations are treated the same in determining the likelihood of confusion between two marks." 509 F.Supp. at 328, citing *Beer Nuts, Inc. v. King Nut Co.,* 477 F.2d 326, 329 (6th Cir.1973).

However, the court was not satisfied that Instrumentalist's registration and use of Sousa's name and likeness *alone* demonstrated a likelihood of success on the trademark infringement claim as Instrumentalist could prevail on its claim for trademark infringement only if "it demonstrates that defendants' use of the Sousa mark creates a likelihood, and not a mere *possibility,* of confusion." 509 F.Supp. at 323. Referring to the Lanham Act, the district court ruled that Instrumentalist had failed to show a "likelihood of confusion" and thus could not meet the burden of establishing a probability of success on the merits on its claim for trademark infringement.

The court's ruling on the Lanham Act was not, however, dispositive of this action because the court had earlier, *sua sponte,* raised the issue of whether Instrumentalist could demonstrate a probability of success on the merits under a state statute, namely the Illinois Anti-dilution Statute. Ill.Rev. Stats. ch. 140, § 22. After considering this statute, the court concluded that Instrumentalist had established a probability of success on the merits on anti-dilution grounds. The Illinois Anti-dilution Statute provides as follows:

> Every person, . . . adopting and using a mark, [or] trade name, may proceed by suit, and the circuit court shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark, [or] trade name, . . . if there exists a likelihood of injury to business reputation or of *dilution of the distinctive quality of the mark,* [or] trade name, . . . of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services . . . . (emphasis supplied).

The court ruled that Instrumentalist had established a likelihood of success on the merits on an anti-dilution claim under the Illinois statute and issued a preliminary injunction, finding that Instrumentalist's Sousa Award had acquired an uncontroverted distinctiveness, and that the similarity between the defendants' "Semper Fidelis" Award and the Instrumentalist's award had the potential effect of "diluting" the distinctiveness of the Sousa Award.[7] 509 F.Supp. at 333. The court's order enjoined the defendants from using the " 'Semper Fidelis Award for Musical Excellence' . . . or any other band award or band award certificate confusingly similar to plaintiff's 'John Philip Sousa Band Award' . . . ."

Rather than appealing from the court's issuance of the preliminary injunction and order, the defendants moved the district court to amend the findings to state that the Illinois Anti-dilution Statute did not apply to the defendants' conduct and to suspend the preliminary injunction. The district court denied the defendants' motion on the grounds that the court's prior order had correctly applied the Illinois Anti-dilution Statute and that it was also proper for the court to enjoin the defendants' activities outside of the State of Illinois as their continued promotion of this award would tend to affect the value of Instrumentalist's property right. The defendants did not appeal from the order denying their motion.

On April 15, 1981, the parties herein entered into a "Consent Decree of Permanent Injunction." The Consent Decree permanently enjoined the defendants from using the newly designed award, referred to as the "Semper Fidelis Award for Musical Excellence" or any other band award or band award certificate that could be classified as "confusingly similar" to the Instrumentalist Co.'s "John Philip Sousa Band Award." The decree stated that the confusing similarity would result from "the manner in which or the extent to which defendants' award or certificate employ[ed] the likeness or name of John Philip Sousa or both."

**7.** The district court also found that Instrumentalist had demonstrated that no adequate remedy at law existed and had further established the prospect of irreparable injury, the final prerequisites to the issuance of a preliminary injunction.

The Consent Decree further stated that the "Semper Fidelis" certificate, attached as an exhibit to the decree, was expressly found not to violate the terms of the decree or Instrumentalist's trademark rights. The approved certificate contained no reference to Sousa on its face, but did contain a quote from a Sousa biography on its reverse side. The court also ordered the defendants in the future to submit any proposed awards or certificates to the court for an inspection and/or determination of whether they were "confusingly similar" to Instrumentalist's award before marketing them to participating high schools.

Some five months thereafter, on September 8, 1981, the Marine Corps League and the United States Marine Youth Foundation sought leave of the district court to again modify the earlier court approved band award certificate. The latest modification of the "Semper Fidelis" Award sought to add the name and seal of the John Philip Sousa Memorial Foundation to the face of the award. After a hearing, on October 21, 1981 the district court denied the defendants' motion to modify the "Semper Fidelis" Award certificate, stating:

"Because of the incorporation by reference into the Decree of the reasons stated in the Opinion, the term 'confusingly similar' in the Decree draws color from the Opinion. As the Decree puts it, we look to:

Such confusing similarity resulting from the manner in which or the extent to which the defendant's award or certificate employs the likeness or name of John Philip Sousa or both.

In a way the case is reminiscent of the series of 'white primaries' cases decided by the Supreme Court, in which the first constitutional violation was a blatant and egregious one, *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944). Later more sophisticated efforts to disenfranchise blacks, though they might perhaps have escaped judicial scrutiny had they been the *first* case presented, met the same fate of invalidity.

Here too we do not write on a clean slate. Exhibit 3 to the Decree [the award found acceptable in the Decree] reflects an unexceptionable award that could not conceivably had been characterized as 'confusingly similar' to plaintiff's John Philip Sousa Band Award. Now defendants propose to change their certificate by including as a co-sponsor the John Philip Sousa Memorial Foundation. In response to the court's inquiry defendants decline to provide any explanation whatever of the circumstances underlying the Foundation's entry into the lists or of the purposes to be served thereby.... Under all the circumstances described in the Opinion, it is the Court's view that some burden of demonstrating the legitimacy of a desired change devoted solely to reintroducing the Sousa identification to their certificate should rest on defendants. They have not made any effort to do so despite the Court's request for information. On the face of things the sole occasion for the proposed revision, absent explanation, appears to be an effort to take an end run around the Decree."

The defendants have appealed from the district court's denial of their motion to modify the "Semper Fidelis" Award certificate.

## ISSUES

1. Did the district court err and abuse its discretion when it denied the defendants' motion to modify the previously approved "Semper Fidelis" Band Award certificate by naming the John Philip Sousa Memorial Foundation as the co-sponsor of the award and further adding the seal of the John Philip Sousa Memorial Foundation to the face of the award?

2. Should this court apply Rule 60(b)(5) of the Federal Rules of Civil Procedure and in doing so vacate both the Consent Decree and the preliminary injunction?

Issue 1: *Denial of Motion to Modify Certificate*

■ Because the approved "Semper Fidelis" Award was attached as an exhibit, and incorporated and made part of the Con-

sent Decree, we will treat the defendants' motion to modify their "Semper Fidelis" Award certificate as a motion to amend or modify the Consent Decree. Since "[t]he decision to grant or deny a request to modify the terms of a Consent Decree rests with the discretion of the District Court," *Environmental Defense Fund, Inc. v. Costle,* 636 F.2d 1229, 1240 (D.C.Cir.1980), *see also System Federal No. 91 v. Wright,* 364 U.S. 642, 646–47, 81 S.Ct. 368, 370–71, 5 L.Ed.2d 349 (1961), the district court's decision to deny the defendants' motion to modify the "Semper Fidelis" Award will only be reversed upon a clear showing of an abuse of discretion.

■ The defendants assert that the district court abused its discretion in several respects in denying their motion to modify the "Semper Fidelis" Award. The defendants allege that the district court abused its discretion when it refused to limit its analysis to a simple comparison of the proposed "Semper Fidelis" Award and the Sousa Band Award, and instead referred back to the original Memorandum and Order and requested the defendants to justify the modification of their "Semper Fidelis" Award. The defendants further assert that the district court erred when, in the defendants' eyes, the court failed to make a finding that the proposed new certificate was "confusingly similar" to the Instrumentalist Co.'s John Philip Sousa Band Award, and that the court's failure to make this finding before denying the defendants leave to amend their certificate constitutes an abuse of discretion. We do not agree with the defendants' arguments because our review of relevant case law reveals that a court may examine extrinsic documents necessary to aid in the interpretation of the terms contained in the consent decree then under consideration. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). Moreover, the Consent Decree states that "confusing similarity result[s] from the *manner* in which . . . the defendants' award employs [or makes use of] the likeness or the name of John Philip Sousa," thus requiring not only an examination of the con-

tent but also the circumstances surrounding the defendants' use of the Instrumentalist Co.'s registered trademark (Sousa's name, image and likeness). Because the district court's original Memorandum and Order and the court's approved Consent Decree refer to the "manner" in which the defendants wished to use Sousa's name, image or likeness, we hold that the district court was not required, as the defendants contend, to limit its analysis to a "side-by-side, eyeball to eyeball" comparison of the proposed "Semper Fidelis" Award and the John Philip Sousa Band Award. Furthermore, after examining the record we hold that the district court properly applied the "confusingly similar" test of the Consent Decree when the court stated:

> "Under all the circumstances described in the [original] Opinion, it is the Court's view that some burden of demonstrating the legitimacy of a desired change devoted *solely* to reintroducing the Sousa identification to their certificate should rest on defendants. They have not made any effort to do so despite the Court's request for information. On the face of things the sole occasion for the proposed revision, absent explanation, appears to be an effort to take an end run around the Decree."

It is clear that the district court was correct when it referred back to the original Memorandum and Order to arrive at a definition of the term "confusingly similar" as it is used in the Consent Decree. As a general rule, a consent decree is to be construed as a contract. *See generally New York State Association for Retarded Children, Inc. v. Carey,* 596 F.2d 27 (2nd Cir. 1979). Indeed, the Supreme Court has held:

> "Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree."

*United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). *See also White v. Roughton,* 689 F.2d 118, at 119–120 (7th Cir.1982).

The Consent Decree in the instant case reads, in pertinent part:

"For the reasons set forth in the Court's 'Memorandum Opinion and Order' of February 6, 1981, defendants Marine Corps League and United States Marines Youth Foundation, Inc., ... hereby are permanently enjoined ... from using the 'Semper Fidelis Award for Musical Excellence' ... or any other band award or band award certificate confusingly similar to plaintiff's 'John Philip Sousa Band Award' ... (such confusing similarity resulting from the manner in which or the extent to which defendant's award or certificate employs the likeness or name of John Philip Sousa or both)...."

As can be seen from a reading of the above language from the Consent Decree, the Decree expressly makes reference to the original Memorandum Opinion and Order and in doing so, incorporates the Order by reference. Moreover, the Decree states that the defendants are permanently enjoined from using an award that might be classified as "confusingly similar" to the Sousa Band Award. Because the term "confusingly similar" was defined in, and draws its meaning from the original Memorandum and Order (a meaning consistent with the common plain interpretation of the term "confusingly similar") and since the meaning of "confusingly similar" is essential to a proper resolution of the Consent Decree, we hold that the district court did not abuse its discretion when it looked to the Memorandum and Order to determine whether the defendants' proposed certificate was "confusingly similar" to Instrumentalist's award.

Next, we are presented with the issue of whether the district court correctly applied the "confusingly similar" test. The defendants assert that the district court abused its discretion by failing to make a factual determination that the defendants' proposed band certificate was "confusingly similar" to that of Instrumentalist. Rather than ordering the defendants to justify their proposed modification, the defendants argue that the term "confusingly similar" required the district court to limit its inquiry to a "simple visual" comparison between the defendants' proposed band award certificate and Instrumentalist's Sousa Band Award. While a simple comparison might possibly be helpful under conventional trademark theories, the defendants ignore the fact that the original district court order was *not* grounded upon Instrumentalist's probability of success under traditional theories of trademark infringement, but rather was based on anti-dilution grounds. Indeed, the district court expressly found that in respect to recovery under the Lanham Act, "Instrumentalist has not carried its burden on the present motion—that of demonstrating that its ultimate success on the 'likelihood of confusion' is itself likely." *Instrumentalist Co.,* 509 F.Supp. at 331. Because the district court grounded its decision granting Instrumentalist's motion for a preliminary injunction on the Illinois Anti-dilution Statute rather than on the Lanham Act, an understanding of the distinction between these two theories of recovery will be helpful to demonstrate why the district court was correct when it declined to limit the scope of inquiry to a simple visual comparison of the two band award certificates.

 Under traditional trademark infringement causes of action, including actions brought under the Lanham Act, a plaintiff must establish that there is a "likelihood of confusion" between the plaintiff's and the defendant's trademarks. *See generally James Burrough, Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir. 1976). The "confusing similarity" which results from a violation of trademark law causes a consumer to choose the defendant's product because that consumer believes the defendant's product is "in some way related to, or connected or affiliated with, or sponsored by the plaintiff." *Id.* at 274. In such cases, in the main, courts conduct a visual inspection of the two products, "in light of

what occurs in the marketplace," *Walt Disney Productions v. Air Pirates,* 581 F.2d 751, 759 (9th Cir.1978), to determine whether there is a "likelihood of confusion" which would cause the consumer to select the defendant's product believing that it is in fact "related to" the plaintiff. However, this is not the case under the Illinois Anti-dilution Statute. The "confusing similarity" resulting from a violation of the Illinois Anti-dilution Statute causes the "dilution of the distinctive quality of the [plaintiff's] mark" by its association with the defendant's product. Ch. 140 § 22, Ill.Rev.Stats. *See also Polaroid Corp. v. Polaraid, Inc.,* 319 F.2d 830, 836 (7th Cir.1963) and *McDonald's Corp. v. Gunvill,* 441 F.Supp. 71, 75 (N.D.Ill. 1977). In the instant case, the district court found that the defendants' original "Semper Fidelis" Award, which prominently featured Sousa's picture, had the effect of "watering down" or diluting the prestige and distinctive quality of Instrumentalist's award. *Instrumentalist,* 509 F.Supp. at 333. This definition of "confusingly similar" goes beyond mere visual similarity and depends more upon the *context* in which the plaintiff's trademark (the picture or representation of Sousa's name and likeness) is used. Therefore, since Instrumentalist had demonstrated a probability of success under the Illinois Anti-dilution Statute, we hold it was proper for the district court to examine the *context* within which the defendants wished to use Instrumentalist's trademark, including any justification offered by the defendants, to determine if the defendants' use would "dilute the distinctive quality" of Instrumentalist's mark.[8]

▮ It was within this framework that the district court, in open court and in the following language, addressed the defendants' motion to modify their "Semper Fidelis" Award:

"What we have here—the thing that troubles me here is there seems to be no legitimate reason for the injection of the Sousa Memorial Foundation into this situation. Other than possibly as a means to get around the provisions of the injunctive orders and that would be very troublesome.... Now I don't know why it is necessary, frankly, for the Marine Corps League to have John Philip Sousa Foundation as a co-sponsor of their award if it's not just a means for an end run.... [F]or example, the legend on the reverse side, which identified Semper Fidelis as the Sousa March and refers to Sousa in that context, obviously poses no problem, because it's not poaching on the John Philip Sousa Award aspect that was the subject matter of this lawsuit, and that resulted in the injunction.

The problem I think is posed by the injection of the Memorial Foundation into the award presentation itself. It is really a stranger to the matter, is it not, except for a possible goal of getting around the injunctive order entered by the court.... I think that in order to grant this, I would have to have some kind of showing as to the basis for the inclusion of the John Philip Sousa Memorial Foundation as cosponsor here of the award ...."

Since we have held that it was proper for the district court to examine the context within which the defendants wished to use Instrumentalist's registered trademark, and since an examination of this context properly included an analysis of any reasons offered to justify the defendants' use of Sousa's name or likeness, we hold that the district court was correct when it directed the defendants to submit further evidence to explain or justify the addition of the "John Philip Sousa Memorial Foundation" to the face of the "Semper Fidelis" Award.

The defendants failed to respond to the court's request to produce information justifying their addition of the John Philip Sousa Memorial Foundation to the face of the "Semper Fidelis" Award. Rather, the defendants chose instead to rely upon facts contained in the transcript of the record

---

**8.** It should be noted that we do not in this opinion purport to interpret the Illinois Anti-dilution statute, but rather we analyze the district court's reasoning in the original order, the

Consent Decree and the final order denying the defendants' motion to modify their band award certificate.

from the preliminary injunction hearing. However, such reliance was misplaced because during the hearing on the defendants' motion to modify the award the district court expressly found insufficient the testimony which the defendants cited in support of their motion. From our independent examination of the record, we agree with the court and hold that the evidence presented to the court was insufficient to establish a justification for the defendants' proposed modification of the "Semper Fidelis" Award. Because we hold that the evidence was insufficient to support a modification, and further in view of the defendants' failure to provide any information justifying their modification, we hold that the district court did not abuse its discretion in denying the defendants' motion to modify the "Semper Fidelis" Band Award certificate.

### 2. *Rule 60(b)(5)*

■ As an alternative argument, the defendants assert that they are entitled to permanent relief from the Consent Decree under Rule 60(b)(5) of the Federal Rules of Civil Procedure. Rule 60(b)(5) provides as follows:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> \* \* \* \* \* \*
>
> (5) ... it is no longer equitable that the judgment should have prospective application ...."

While the defendants admit that they failed to appeal from either the district court's order or the Consent Decree, and further admit that these orders are now *res judicata,* the defendants request this court to fashion some type of relief or remedy under Rule 60(b)(5). The Marine Corps League and the United States Marine Youth Foundation argue that the original district court order "runs so contrary to any acceptable theory of trademark rights as to have heaped a gross inequity on the [defendants] in the denial of their motion." Because we do not agree with the defendants' argument

and hold that Rule 60(b)(5) cannot and should not be construed to allow it to be used as a substitute for the appeal process, we reaffirm prior decisions of this and other courts that Rule 60(b)(5) should be applied in only the most "extraordinary circumstances." We hold that the defendants have failed to demonstrate to this court's satisfaction that any "extraordinary circumstances" exist here, and we therefore decline to invoke Rule 60(b)(5).

It is a well established general rule "that modification of a judgment pursuant to Rule 60(b) is extraordinary relief which requires the showing of special circumstances." *United States v. Workwear Corp.,* 602 F.2d 110, 114 (6th Cir.1979). *See also Ackerman v. United States,* 340 U.S. 193, 202, 71 S.Ct. 209, 213, 95 L.Ed. 207 (1950). Moreover, Rule 60(b) "is clearly *not* a substitute for appeal and must be considered with the obvious need for the finality of judgments." *Brown v. McCormick,* 608 F.2d 410, 413 (10th Cir.1979) (emphasis in original). *See also De Fillippis v. United States,* 567 F.2d 341, 342 (7th Cir.1977). In order to be granted relief under Rule 60(b)(5) the defendants must show "a grievous wrong invoked by new and unforeseen conditions." *De Fillippis,* 567 F.2d at 342. Moreover, Rule 60(b)(5) "does not allow relitigation of issues which have been resolved by the judgment. Rather, it requires a change in condition that makes continued enforcement inequitable." *Id.* at 343–44.

The defendants herein have not established to this court's satisfaction that there has been a "change in condition that makes the continued enforcement [of the Consent Decree] inequitable." The defendants have failed to establish these "new and unforeseen conditions" even when expressly directed by the district court to justify the proposed change in the "Semper Fidelis" Award. Instead, the defendants base their entire argument on an attack of the district court's reasoning in the original Memorandum and Order. During opening arguments at the hearing on Instrumentalist's motion for a preliminary injunction, the district court, *sua sponte,* requested that

both Instrumentalist and the defendants prepare arguments on the applicability of Illinois' Anti-dilution Statute. The defendants orally argued their position and submitted briefs and memoranda urging that the Anti-dilution Statute was not applicable. However, after a full and complete hearing the district court ruled that the Anti-dilution Statute did apply, and based on that statute, issued an injunction. This order is now *res judicata;* if the defendants disputed the district court's interpretation of Illinois' Anti-dilution Statute, they should have appealed from the original Order. In light of the policy that "there must be an end to litigation someday. Absent a clear showing of grievous wrong, judgment will not, and cannot, be opened," *De Fillippis,* 567 F.2d at 344, we decline to vacate the original judgment and Consent Decree, and hold that the defendants are bound by the district court's Memorandum and Order and by the Consent Decree.

By the Court: Affirmed.

ESCHBACH, Circuit Judge, concurring.

Believing that the district court judgment should be affirmed, I write separately only to emphasize two points. First, although the question is a close one here, I do not believe that our review in this case is governed by the abuse of discretion standard. The district court was called on to interpret the provisions of a consent decree, which is essentially a contract between the parties. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). Our review of the correctness of the district judge's interpretation is plenary. *See, e.g., White v. Roughton,* 689 F.2d 118 (7th Cir. 1982). Second, because this court is asked to discern the meaning of a consent decree, not Illinois law, this court's opinion does not stand as precedent for the proper construction of the Illinois anti-dilution statute, Ill. Rev.Stat. ch. 140 § 22 (1981).