Warren C. NELSON, Earl A. Curreri, Carl Jackson, Prisoners of the Maryland Penitentiary, on behalf of themselves and all others similarly situated, Appellants,

v.

George H. COLLINS, Warden, Maryland Penitentiary; Mary Lou Bartram, Superintendent, Maryland Reception Diagnostic and Classification Center; Elmanus Herndon, Commissioner, Maryland Division of Correction; Thomas W. Schmidt, Secretary, Maryland Department of Public Safety and Correctional Services; Henry P. Turner, Chairman, Maryland Parole Commission; Harry Hughes, Governor of the State of Maryland; McLindsey Hawkins, Assistant Warden, Maryland Penitentiary; Sigmund Fine, Assistant Warden, Maryland Penitentiary; Maryland Division of Correction; Louis Goldstein, Member, Board of Public Works; William S. James, Member, Board of Public Works; D.J. Smith, Sargeant, Maryland Penitentiary, sued individually and in their official capacities, Appellees.

No. 81–6358.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 8, 1982.

Decided Feb. 18, 1983.

Sharon R. Beckler, Prisoner Assistance Project, Legal Aid Bureau, Inc., Baltimore, Md., for appellants.

Richard Rosenblatt, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen., Stephen B. Caplis, Chief, Correctional Litigation, Asst. Atty. Gen., Baltimore, Md., on brief), for appellees.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Prisoners confined at the Maryland Penitentiary appeal from an order of the district court that modified an injunction governing the use of the penitentiary's isolated confinement area (ICA). We conclude that the injunction may be altered, but we remand for the district court to determine in accordance with *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), whether modification of its provisions is permissible.

I

The background of this appeal is disclosed by *Nelson v. Collins,* 455 F.Supp. 727, 732, 734–35 (D.Md.1978), where the court found:

The Penitentiary contains six isolation cells of 56 square feet each. Each cell has a barred door and a solid metal door and contains a concrete slab for a bed as well as an open toilet and sink. The cells are intended to hold on a short-time basis inmates with severe emotional or mental problems who are likely to cause harm to themselves or others. The evidence indicates that a number of prisoners have been confined to these cells for extended periods of time. It also shows that adequate and timely professional care has not been provided on a regular basis.

* * * * * *

The only other area in which the court finds unconstitutional deficiencies is the six-cell isolated confinement section. Ostensibly, these cells are used to isolate prisoners who appear sufficiently deranged to constitute a threat to themselves or others. The witnesses were in virtual agreement that if used at all the isolation cells should be used for only a limited time and for a limited purpose.

The district court's injunction implementing its opinion divided the prisoners into two groups. It ordered that a prisoner could be placed in the ICA only if he was suffering from an "emotional disturbance or derangement" and was a danger to himself or others. This decision had to be made by a physician, psychologist, or the highest-ranking prison official on the penitentiary grounds. Once committed to the ICA, a prisoner had to be reevaluated every 24 hours and could remain in the ICA no longer than 72 hours. The use of the ICA to confine other prisoners was prohibited.

On appeal, we held: "In *Nelson* the court found extended confinement in the punitive isolation unit [ICA] violated the Eighth Amendment. The judge imposed limitations on the use of the cells. We affirm these findings of constitutional deprivation and the grant of appropriate relief." [1]

Despite the district court's injunction and its affirmance on appeal, penitentiary officials continued using the ICA cells for other than "deranged" prisoners. Moreover, evidence established that several prisoners had been confined in the ICA for periods that long exceeded the limitations of the district court's injunction. Consequently, the prisoners moved the district court to impose fines for contempt and to close the ICA.

After a hearing, the court found that the officials had violated the injunction but decided not to hold them in contempt.[2] Instead, it closed the ICA and directed the state to prepare a plan for the short-term handling of prisoners, with behavioral or psychological problems, who are not considered to be mentally ill.[3]

The district court adopted the state's plan and reopened the ICA over the objections of the prisoners. Contrary to the provisions of the previous injunction, the plan provides for the use of the ICA to confine prisoners who misbehave and cannot be otherwise restrained. Although the plan requires frequent monitoring of each prisoner, it permits confinement in the ICA for as long as 14 consecutive days and for an indefinite time if a psychiatric examination discloses that the prisoner's problem is behavioral and he resumes his disruptive conduct.

In its order approving the plan, the district court made no findings of changes in the ICA which would justify confinement of prisoners who seriously misbehaved, a practice that had been previously enjoined in *Nelson*. It also made no findings of changes that would justify exceeding the time limits imposed by *Nelson*.

## II

The injunction previously granted by the district court is a continuing decree

---

1. *Johnson v. Levine*, 588 F.2d 1378, 1381 (4th Cir.1978) (en banc), *affirming in pertinent part Nelson v. Collins*, 455 F.Supp. 727 (D.Md.1978).

2. The prisoners do not appeal the district court's refusal to hold the officials in contempt.

3. The state had previously created a mental observation unit at the penitentiary for mentally ill prisoners who are no longer sent to the ICA. All parties agree that this is a commendable reform, and it is not a subject of this appeal.

subject to modification. *Nelson v. Collins,* 659 F.2d 420, 423–24 (4th Cir.1981). It can be modified if the district court finds that changes of fact or law justify its adaptation to altered circumstances. *United States v. Swift & Co.,* 286 U.S. 106, 114–15, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). The court, however, is "not at liberty to reverse under the guise of readjusting." 286 U.S. at 119, 52 S.Ct. at 464.

■ Because the district court substantially modified the original injunction without finding that any change had occurred, we must vacate its order. On remand, the court may reinstate its order, if it finds events occurring since the entry of the original injunction justify approval of the state's plan. If the state fails to prove such changes, the original injunction may not be disturbed. *See United States v. Swift & Co.,* 286 U.S. at 119, 52 S.Ct. at 464; *Nelson v. Collins,* 659 F.2d at 424.

VACATED AND REMANDED.