**Joe STEWART, et al.,
Plaintiffs-Appellants,**

v.

**GENERAL MOTORS CORP.,
Defendant-Appellee.**

No. 82–2778.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1983.

Decided Feb. 22, 1985.

Kenneth N. Flaxman, Chicago, Ill., for plaintiffs-appellants.

Patricia A. Brandin, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before COFFEY, Circuit Judge, FLAUM, Circuit Judge, and CAMPBELL, Senior District Judge.[*]

WILLIAM J. CAMPBELL, Senior District Judge.

The major issue before this Court is whether the district court erred in vacating the permanent injunction in this cause. The injunction was ordered on December 15, 1975 when the district court determined, after a non-jury trial, that General Motors had violated Section 703 of Title VII [42 U.S.C. § 2000e-2] in its promotional

practices at its Broadview facility. The decree was designed to replace defendant's highly subjective and loosely structured promotion procedures with a system that provided notice of vacancies, objective evaluations, and advancement based on merit and seniority. The injunction remained in effect until August 31, 1982 when the district court, upon defendant's motion, vacated the decree. The plaintiff, Joe Stewart,[1] appeals that decision contending that the district judge utilized an erroneous legal analysis and that the burden of proof was improperly placed on the plaintiff class to justify continuance of the injunction. Appellant also argues that the class did not receive adequate legal representation in opposing defendant's motion and that the district court erred in denying attorneys' fees to plaintiffs' counsel.

This action was filed in August of 1973 and alleged racial discrimination in two aspects of defendant's employment practices: the promotions to the position of hourly clerk and the promotions to salaried positions. The plaintiff class was certified as all black employees in hourly-rated positions at the General Motors Broadview parts facility as of or after December 21, 1973. Plaintiff's case was based on the disparate impact theory, that is, that the defendant's promotional practices were not overtly discriminatory but that they were discriminatory in operation, see *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

At trial the plaintiffs demonstrated statistically the extreme disparity between whites and blacks in the hourly clerk and salaried positions as opposed to the proportion in the general labor force. The defendant attempted to justify its procedures for making promotional decisions but was unable to persuade the district court that its methods were based on a business necessity. Notices of job vacancies and educational opportunities were not publicized

[*] Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Joe Stewart is the only plaintiff who is a party to this appeal.

in a uniform fashion. While the defendant claimed to utilize a *bona fide* seniority system in promoting employees to hourly clerks, the court found that seniority was often not a determining factor. The supervisors' evaluations of the employees were heavily relied upon in promotional decisions regarding salaried positions, but they were not based on any objective criteria.

The district court entered judgment for the plaintiffs and fashioned a detailed mandatory injunction. The decree was designed to provide notice to all employees of job vacancies and educational opportunities, to create a *bona fide* seniority system for the hourly clerks' promotions, and to implement an objective system for evaluation with respect to promotions to salaried positions. The injunction also created an Equal Employment Opportunity (EEO) Committee at the Broadview plant consisting of three representatives of management, three members of the plaintiff class and a neutral member. All disputes regarding compliance with the decree were to be presented initially to this committee for amicable resolution. If that was unsuccessful the issues could be presented to the district court.

This Court affirmed the trial court's order with one minor exception [2] and remanded the cause for a determination of a back pay award, *Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir.1976) [hereafter *Stewart I*]. Upon remand the plaintiffs filed a petition claiming that the defendant was guilty of numerous violations of the decree. The court ordered the plaintiffs to present the claims to the EEO Committee. The committee was unable to resolve the matters, and thereafter a full trial was held on the allegations. The district court found some violations but determined General Motors not to be guilty of a majority of the claims. The defendant was held in contempt, but the district judge denied plaintiffs' request for damages,

finding that no prejudice had been demonstrated from the violations. Nonetheless, the defendant appealed and this Court affirmed in an unpublished order, *see Table*, 618 F.2d 113 (7th Cir.1980).

In April of 1980 the district court resolved the back pay issue by awarding the class $31,446. The plaintiffs had requested over $600,000. Soon after the award, the plaintiffs moved to discharge their counsel claiming "irreconcilable conflicts." The district court granted the motion and substitute counsel, Richard Cantor and Judith Halprin, were retained. The new attorneys then filed a Motion for New Trial on the back pay issue, but the motion was denied. The plaintiffs appealed the decision and this Court affirmed in an unpublished order, *see Table*, 657 F.2d 271 (7th Cir.1981).

While the back pay award was pending, plaintiffs filed another petition claiming violations of the decree by the defendant. General Motors denied any violations and moved to vacate the decree, contending that it was no longer necessary. The district court denied relief to both parties. He noted that the plaintiffs' allegations lacked the requisite specificity and that they had again failed to present their complaints to the EEO Committee. As to the defendant's Motion to Vacate the Decree, the court found the request to be premature since the appeal of the back pay award was still pending and the plaintiffs had submitted a second set of alleged violations.

The plaintiffs subsequently presented their complaints to the EEO Committee and the neutral member, Dr. Jordan Jay Hillman, issued a report finding no violations of the decree. Nonetheless, the plaintiffs pursued the issues before the trial court and evidentiary hearings were held on June 17, 21 and 22, 1982 concurrently with defendant's Motion to Vacate the Decree.

---

2. The original injunction provided that vacancies in hourly clerk positions would be filled by the employee with the highest seniority on the shift on which the vacancy occurred. This Court modified the decree to provide that those vacancies should be filled by the employee with the highest seniority regardless of shift, *Stewart v. General Motors Corp.*, 542 F.2d 445, 451 (7th Cir.1976).

## General Motors' Motion to Vacate Decree

On March 11, 1982, after Dr. Hillman submitted his report finding no violations of the decree, General Motors renewed its Motion to Vacate Decree. The district court received affidavits and exhibits in support of defendant's motion and held an evidentiary hearing on June 17, 21 and 22 (in conjunction with plaintiffs' allegations of violations of the injunction). Thereafter, the district judge entered an extensive memorandum embodying his decision. The findings of fact stated therein are not challenged by either party to this appeal.

The court found that since the decree had been implemented the situation of black employees at Broadview had changed significantly. The number of blacks in salaried positions had almost doubled and had also increased with respect to the hourly clerk positions. Furthermore, in July of 1979 the employees elected to become unionized, which resulted in the United Auto Workers being certified as their exclusive bargaining representative. A collective bargaining agreement was negotiated and became effective on October 11, 1979. One of the subjects of the negotiations involved the interaction of the decree and the CBA. The contracting parties agreed that the promotions to the hourly clerk's position would still be governed by the decree, while all other promotions and transfers would be subject to the union's contract. If the decree were vacated, however, the hourly clerk promotions would be governed by the CBA. The district court found that the provisions of the CBA relating to notices of vacancies, evaluations, and promotions were essentially similar to those in the decree. The contract required a uniform application procedure for job vacancies, reports to the employees from General Motors regarding their seniority status, and the implementation of a *bona fide* seniority system. The CBA also provided for a grievance and arbitration procedure for employee complaints as well as a Fair Employment Practices Committee especially for claims regarding discrimination.

In 1979 the management at Broadview adopted new procedures regarding the promotions of hourly employees to salaried positions. This Divisional Assessment Program was designed to create a pool of qualified candidates for salaried positions from the ranks of hourly employees. The district court noted that the program was utilized at numerous other General Motors plants and involved a comprehensive system of objective and work-related evaluations. Based on statistical evidence, the trial judge found that since its implementation at the Broadview plant the program had operated in a non-discriminatory manner.

The district court concluded that the decree had served its purpose of remedying the statistical disparity between the number of blacks in the labor force vis-a-vis the number of blacks promoted to the higher level positions. The district judge also determined that the other function of the injunction, the creation of objective and uniform promotional guidelines, was now redundant in view of the CBA and the Divisional Assessment Program. As to the potential harm involved in maintaining the decree, the court noted that the multiplicity of procedures could cause confusion among the workers. Furthermore, "the decree was never meant to retard the development of programs which will operate to benefit defendant's employees generally, without injuring any members of the plaintiff class." Memorandum Opinion, August 31, 1982, p. 11. Based on these considerations, the district court found ample grounds for vacating the decree pursuant to Fed.Rule Civ.Proc. 60(b).

## Plaintiffs' Second Motion for Substitution of Counsel

On May 24, 1982 plaintiffs moved again to substitute counsel. A brief hearing was held at that time. Plaintiff Joe Stewart was present at that hearing and stated the basis for the motion:

"I think I found an attorney who will do a better job of representing this part of the case and I have been paying my

money for these attorneys ..." tr. May 24, 1982 p. 2.

Nonetheless, no new counsel was mentioned in the motion nor specified at the hearing. The court took the matter under advisement until June 10, 1982 when another hearing was held. At that time, the trial judge noted that the hearing scheduled for June 17, 1982 had been set on May 6, 1982 and involved matters that had been pending for some time. He then denied plaintiffs' motion stating:

I do not intend at this late date to permit the members of the class to come in and ask me to substitute counsel. I am going to refuse that—if the individual plaintiffs desire individual counsel personally, that's up to them, but so far as the class is concerned, the Court controls who is appointed as an attorney for the members of the class, and I intend to make no further appointment in this connection, as I said a moment ago, until these matters are attended to. tr. June 10, 1982 p. 5.

Therefore, Halprin and Cantor represented the class at the hearings in June of 1982 and were permitted to withdraw on September 10, 1982.

### Plaintiffs' Attorneys' Fees Petitions

Plaintiffs' second set of attorneys filed two fee petitions in the district court.[3] On November 13, 1981 they filed a request concerning their representation on the motion for new trial and appeal of the back pay issue as well as for the second motion to enforce the decree. The district judge discussed the petition extensively in his order of August 21, 1982 and concluded that since the plaintiffs had not prevailed on any of those matters a fee award was inappropriate.

On September 9, 1982 substitute counsel filed another, rather unique, fee petition. The attorneys sought $9,275 for their work in opposing defendant's Motion to Vacate the Decree. The request was not premised on 42 U.S.C. § 2000e–5(k), but on what the

district court described as a "quasi-equitable" theory. Substitute counsel claimed that they were hired by the plaintiffs solely to pursue the back pay appeal and that their opposition to defendant's Motion to Vacate the Decree was presented "solely upon the Order of this Court and over the objection of the plaintiff class," Fee petition, p. 3. The attorneys conceded that the prevailing party standard of § 2000e–5(k) was inapplicable. Instead, they argued:

Counsel believe that it is now incumbent upon the Court to see that counsel are adequately compensated for the work it required them to perform. Failure to do so would result in the indentured servitude of these counsel, a state of affairs forbidden by the United States Constitution. Fee petition, p. 4

The district court described counsel's argument as unpersuasive, a characterization that appears exceedingly tactful. The judge found no basis in the record for the contention that substitute counsel were hired only for the back pay appeal. Those attorneys had initiated the second set of contempt proceedings and had filed a response to defendant's Motion to Vacate prior to seeking leave to withdraw. The trial judge also noted that the lawyers were aware that their compensation might depend on the outcome of the litigation as they had made provision for that in a fee agreement with some of the class members. The court concluded that under the circumstances "counsel were only carrying out their substantial ethical and fiduciary duties to protect the class until such time as they were relieved of this responsibility by the court." Memorandum Opinion and Order, October 28, 1982, p. 3. Finding that he had no authority to grant the fees under the "quasi-equitable" theory presented, the district judge denied the fee request.

### Discussion

■ Appellant claims that the district court applied an erroneous legal standard in evaluating defendant's Motion to Vacate the Decree. Despite its monolithic presen-

---

3. The plaintiffs' first set of attorneys had received a total of $165,956.65 in fees for work involving the initial trial and appeal, the back pay trial, and the first contempt motion.

tation, the argument consists of two separate assertions. The first is that the district court erred in placing the burden of proof on the plaintiffs in these proceedings. The law appears settled that the defendant bears that burden on a motion to vacate an injunction, *Humble Oil & Refining Comp. v. American Oil Comp.*, 405 F.2d 803 (8th Cir.1969), *cert. den.* 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Loc. 249 v. Western Penn. Motor Carriers Assoc.*, 660 F.2d 76 (3rd Cir.1981); *Nelson v. Collins*, 700 F.2d 145 (4th Cir.1983). However, the record does not support appellant's characterization of the proceedings. At the June 10, 1982 conference the district judge stated three times that the defendant bore the burden of proof on its motion and the hearings would be structured accordingly, tr. June 10, 1982, pp. 10, 13, 24. In support of his position, appellant quotes certain portions of the Memorandum and Order of August 31, 1982. In those statements, the district judge noted that the plaintiffs had presented no evidence that the decree would be more effective than the CBA in eliminating discrimination or that the discrimination would reemerge if the injunction were vacated. These observations do not indicate that any burden was placed upon the plaintiffs. They merely note that the defendant's case on these issues was not rebutted. Accordingly, we find no merit to this claim of error.

The more substantial aspect of appellant's argument is that the district court failed to apply the analysis mandated in *United States v. Swift*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). In that case, the Court provided a stringent standard for determining whether a change in circumstances justified vacating an injunction:

> The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. 286 U.S. at 119, 52 S.Ct. at 464

However, as discussed in *United States v. City of Chicago*, 663 F.2d 1354 (7th Cir. 1981), the *Swift* rationale was reevaluated in *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968). This Court analyzed the evolution of the standard and concluded:

> The standard for modification of injunctions that emerges from *Swift* and *United Shoe* is thus not based solely on hardship to the enjoined party. The standard also incorporates consideration of whether there remains any need to continue the injunction, that is, whether "the purposes of the litigation as incorporated in the decree" have been achieved. [Footnote omitted.] 663 F.2d at 1360.

In determining the purpose of the decree in this case we begin with the basic principle that an injunction does not create any vested rights for a plaintiff; it is simply a remedy designed to vindicate pre-existing rights, 7 Moore's Federal Practice ¶ 60.26[4], p. 252 (2nd Ed.1983). Prior to the injunction in this cause, the plaintiffs possessed the right to be treated equally with the other employees in promotional decisions. The decree could not and did not enlarge that right. It merely protected that right by imposing a uniform and objective evaluation process to replace the subjective method which had been previously utilized, *see discussion, Stewart I*, 542 F.2d at 450. The decree addressed two categories of promotions and since the changes in the circumstances were different as to each of them, they will be discussed separately.

The major change with respect to the promotions to the hourly clerk positions is that the employees are now unionized. It is conceded that, in the absence of a decree, those promotions would be governed by the CBA. The district court found that the CBA provided a uniform and objective evaluation process as well as the procedural means to enforce it. The appellant does not challenge that assessment. It is axiomatic that an injunction is only appropriate when the relief required cannot be obtained through a legal remedy. Thus,

the existence of the CBA is a significant change in the circumstances because it provides a legal remedy which is coextensive with the equitable remedy provided by the district court.

The appellant relies on *Coalition of Black Leadership v. Cianci,* 570 F.2d 12 (1st Cir.1978) for the proposition that the creation of an analogous legal remedy is insufficient to warrant vacating the decree. *Cianci* was a class action in which the black residents of Providence, Rhode Island claimed their civil rights were being violated by various police officers and public officials of that city. The parties entered into a consent decree which included procedures for the processing of civilian complaints against police officers. Thereafter, Rhode Island passed legislation which provided for a similar procedure. After the enactment of the new law, the city moved to vacate the injunction. The district court denied the motion and was affirmed on appeal. Appellant quotes the following language from that decision:

> [T]he fact that the new legislation might accomplish much of what a consent decree was designed to achieve cannot be viewed as justification for vacating the decree. [Citations omitted.] 570 F.2d at 14.

However, the situation there was significantly different from this case. The legislation was not enacted for the benefit of the plaintiffs nor to protect the type of rights involved in that case. In fact, the new law was entitled "Law Enforcement Officers' Bill of Rights." The court specifically noted that it conflicted with certain terms of the consent decree, *Id.* p. 31. In this case, the CBA was negotiated for the benefit of the employees and includes an element of consent not present in *Cianci.* More importantly, it provides an enforcement mechanism, the grievance-arbitration procedure, as well as representation for the individual employee. The CBA also created a Fair Employment Practices Committee to protect the type of rights involved in this lawsuit. Therefore, we find that the *Cianci* case is easily distinguishable from the case at bar. The legal remedy created there was not coextensive with the decree and was unrelated to the purpose of the injunction.

Appellant also suggests that union representation and the negotiation of the CBA involves majoritarian processes which could conflict with a minority individual's rights under Title VII, citing *Alexander v. Gardner-Denver Comp.,* 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974). While the Court there noted the potential for such a conflict, it held that an employee's rights under Title VII could not be waived through the collective bargaining process nor through the submission of a grievance to arbitration. Thus, in this case, the plaintiffs' substantive rights could not be compromised by the CBA. Moreover, the remedy created by the decree did not grant the plaintiffs any preferred status with respect to promotional decisions. It did not mandate any affirmative action program nor did it impose any racial quotas. The injunction only enforced plaintiffs' right to receive equal consideration. Thus, there is no basis for presuming a conflict of interest between the plaintiffs and the other employees.

With respect to the promotions to salaried positions, the district court found that the Divisional Assessment Program provided objective and uniform standards for evaluations. In fact, the trial judge suggested that the new program was an improvement over the system imposed by the decree. Furthermore, at the time the hearing was held on General Motors' motion the Divisional Assessment Program had been in operation for three years. The statistics revealed that it had operated in a non-discriminatory fashion. The plaintiffs presented no evidence which contradicted the assessment. Thus, this is not a situation in which the defendant has simply announced a new policy which has not been implemented or tested for its discriminatory impact, *see Brooks v. County School Board of Arlington County, Va.,* 324 F.2d 303, 306 (4th Cir.1963). This is a case where the promotional process adopted by the defendant is consistent with the guide-

lines of the decree. Furthermore, the results of the new procedures indicate that the rights of the plaintiffs will not be endangered by its implementation.

■ There are other considerations which militate in favor of vacating the decree. Past compliance is an appropriate factor to consider in this situation, *Brooks supra,* 324 F.2d at 307, *Tobin v. Alma Mills,* 192 F.2d 133 (4th Cir.1951), *cert. den.* 343 U.S. 933, 72 S.Ct. 769, 96 L.Ed. 1342 (1952), although it is not a basis in itself for relief, *see Walling v. Harnischfeger Corp.,* 242 F.2d 712 (7th Cir.1957).[4] The district court noted that General Motors has been in substantial compliance with the decree from the beginning. The only violations ever demonstrated involved the failure to post notices of certain job openings and the court found that none of the plaintiffs had been harmed by that omission.

■ Other factors to be considered are the harm and benefits that maintenance of the injunction would cause. The defendant is now applying four different procedures for the promotions of hourly employees. The expense and duplication of effort is not insignificant. The plaintiffs must understand and attempt to utilize the four different systems. Since the CBA and the Divisional Assessment Program are consistent with the guidelines of the decree, the only benefit of maintaining the injunction is that it gives the plaintiffs better leverage in ensuring compliance with Title VII. In view of defendant's past compliance and the means available through the CBA to enforce fair employment practices, this consideration is not entitled to great weight.

■ In summary, it appears that the injunction has served its purpose. The discriminatory conduct which was permitted to occur under the old subjective promotional guidelines did not reappear when the objective procedures were implemented pursuant to the decree. As a result, the number of blacks in upper level positions increased significantly. Since the entry of the decree two new sets of objective promotional guidelines have been developed as a result of the CBA and the implementation of the Divisional Assessment Program. In view of the proven effectiveness of these methods the decree's provisions are now redundant and serve only to cause confusion and waste. Upon evaluating the numerous considerations involved, we conclude that the district court did not err in vacating the decree.

■ Appellant argues that the class was deprived of making a "fundamental litigation decision" in this case by the district court's denial of the second motion to substitute counsel. It is, of course, within the discretion of the district court whether to permit such a substitution. The denial of the motion will not be reversed unless there existed a demonstrable conflict of interest or a total lack of communication between the attorney and the client, *United States v. Morris,* 714 F.2d 669 (7th Cir.1983). Furthermore, in a class action suit the district court has a fiduciary duty to protect the class members and thus motions to substitute counsel must be carefully scrutinized. In this case no conflict of interest was alleged and no breakdown of communication was demonstrated. At the May 24, 1982 hearing, the only basis for the motion presented was that the class representative thought he had found a better attorney. However, no new counsel was named in the motion or at the hearing. Furthermore, the hearing set for June 17, 1982 involved matters which had been

---

**4.** The defendant in *Walling* based its motion to vacate the injunction solely on continued compliance and conceded on appeal that it made no allegations of changed conditions. Similarly, in *SEC v. Advance Growth Capital Corp.,* 539 F.2d 649 (7th Cir.1976) the defendants did not claim that a change in circumstances warranted vacating the decree. Instead, they relied upon their compliance, the lack of harm to third parties, and the professional embarrassment suffered by them. This Court affirmed the district court's denial of the motion noting that the injunction could not be impeached on the basis of conditions which existed at the time of its entry, *Id.* at 651. Thus, those two cases are clearly distinguishable from this case because here General Motors has alleged and demonstrated significant changes in circumstances.

pending a long time and about which present counsel was intimately familiar. The duplication of effort and delay which would be caused by a substitution were certainly relevant factors for the district judge to consider. Under these circumstances we find no abuse of discretion in the district court's denial of the motion for substitution of counsel.

 In conjunction with the issue discussed above, appellant contends that the plaintiff class was not adequately represented by its counsel at the hearing on defendant's Motion to Vacate the Decree. He argues that the inordinate time spent in preparation by Halprin and Cantor, as reflected in their fee petition, indicates their lack of competence. We believe this is an insufficient basis for determining the adequacy of counsel when the record reveals no significant weaknesses in the representation. We note that at the conclusion of the hearing on June 22, 1982 the district judge commended both sets of counsel for their able presentations. Therefore, we find no basis for this contention.

 Finally, appellant claims error in the district court's denial of the two fee petitions presented by Halprin and Cantor. The first involved counsel's work on the back pay appeal and the second contempt motion. In its order of August 31, 1982 the district judge denied the request. As to the fees regarding the back pay appeal, we find no error in the district court's application of the prevailing party standard. Appellant contends that with respect to the second contempt motion the district court should have applied the "reasonable monitoring" standard adopted in *Northcross v. Board of Education*, 611 F.2d 624

(6th Cir.1979), *cert. den.* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). In that case the court determined that certain post-decree legal fees should be compensated under 42 U.S.C. § 1988 regardless of success if they were necessary to the reasonable monitoring of the injunction. This Circuit has yet to adopt that standard. Nonetheless, that theory would be inapplicable to the facts of this case. In applying *Northcross* one court summarized the relevant factors:

> From its examination of the record, the court is satisfied that counsel's efforts were reasonably necessary to secure compliance, were not frivolous or superfluous, and did make a substantial and important contribution to the achievement of benefits sought under the 1978 consent decree.

None of those factors are present in this case. Both Professor Hillman and Judge Decker found that General Motors was in compliance with the decree and that the second contempt motion had no merit. Appellant has not demonstrated any benefit to the class that resulted from that motion. Therefore, even if we were to adopt the "reasonable monitoring" standard, it would not result in a recovery of attorneys' fees in this case.

 The second fee petition filed by Halprin and Cantor was not based on any statutory authority but on a rather curious equitable theory. We note that appellant's counsel chose not to pursue that particular argument on this appeal.[5] Unfortunately, since the district court was not presented with the statutory argument, we cannot address that contention on this appeal.

---

5. We consider that decision rather prudent. As noted previously, the conduct of Halprin and Cantor belied their contention that they were hired solely for the back pay appeal. More importantly, the district judge had no authority to award attorneys' fees on the quasi-equitable theory presented in the fee petition. We agree with the district court that counsel were only fulfilling their ethical duties in continuing to represent the plaintiffs.

One accepting employment as counsel in a class action does not become a class repre-

sentative through simple operation of the private enterprise system. Rather, both the class determination and designation of counsel as class representative come through judicial determinations, and the attorney so benefited serves in something of a position of public trust. *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2nd Cir.1973). We judges can certainly appreciate that there are times when a public trust resembles indentured servitude, but we are rarely able to alter that situation.

Accordingly, the order of the district court is affirmed.