David ZBARAZ, M.D., et al., Plaintiffs,

v.

Neil F. HARTIGAN, Attorney General of Illinois, and Cecil A. Partee, State's Attorney of Cook County, Defendants.

No. 84 C 771.

United States District Court, N.D. Illinois, E.D.

Oct. 3, 1991.

Colleen K. Connell, Roger Baldwin Foundation of ACLU, Chicago, Ill., for plaintiffs.

Kathleen Kreisel Flahaven, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

On May 4, 1984, we enjoined enforcement of the Illinois Parental Notice of Abortion Act of 1983 ("Act"). *Zbaraz v. Hartigan*, 584 F.Supp. 1452 (N.D.Ill.1984),

*aff'd in part, vacated in part*, 763 F.2d 1532 (7th Cir.1985), *aff'd*, 484 U.S. 171, 108 S.Ct. 479, 98 L.Ed.2d 478 (1987). We found that the statute was unconstitutional by imposing a 24 hour waiting period, and by failing to provide an adequate bypass procedure as an alternative to the statute's parental notice requirement. Defendants have now petitioned for us to review the constitutionality of the statute as supplemented by a judicial bypass rule promulgated by the Illinois Supreme Court ("Rule 307"). The defendants also ask us to lift our injunction of the 24 hour waiting period in light of the Supreme Court's decisions in *Hodgson v. Minnesota*, —— U.S. ——, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) and *Ohio v. Akron Center for Reproductive Health*, —— U.S. ——, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) ("Akron II"). Because we find that Rule 307 fails to assure that a minor seeking an abortion is given a constitutionally valid alternative to notifying both her parents, we continue to enjoin enforcement of the Act.

## I.

### A. *Case History*

Plaintiffs filed this class action to enjoin the Illinois Attorney General and a defendant class consisting of Illinois state's attorneys from enforcing the Illinois Parental Notice of Abortion Act of 1983, Ill.Rev. Stat. ch. 38, par. 81–61, *et seq.* The plaintiff class includes physicians who wish to perform abortions for unemancipated minors and adjudicated disabled persons, and minors and disabled persons desiring to obtain an abortion. In 1984, we granted the plaintiffs' motion for summary judgment and permanently enjoined operation of the statute. We held that the statute's 24 hour waiting period unconstitutionally burdened a young woman's decision to have an abortion. We also found that the statute's judicial bypass procedure failed to assure a woman that her waiver of notice hearing, or a subsequent appeal if waiver was denied, would be both confidential and expeditious.

The Seventh Circuit affirmed our holding that the 24 hour waiting period was uncon-

stitutional, but found that this provision was severable from the Act. The court also vacated our finding that the bypass procedure was unconstitutional, but continued to enjoin enforcement of the Act. The court remanded the case to us to determine the constitutionality of the bypass proceedings at such time as the Illinois Supreme Court promulgated rules to provide a confidential and expeditious waiver procedure. 763 F.2d at 1545. The United States Supreme Court affirmed, without an opinion, by an equally divided vote. 484 U.S. 171, 108 S.Ct. 479 (1987).

### B. *Illinois Parental Notice of Abortion Act of 1983*

The Illinois Parental Notice of Abortion Act was enacted by the Illinois General Assembly on November 2, 1983, over Governor Thompson's veto. Section 4 of the statute requires a person performing an abortion upon an "unemancipated minor" or "incompetent" to give 24 hours actual notice (by phone or in person) to both the pregnant woman's parents. Only one parent must be notified if the woman's parents are divorced or if one of the parents is "not available." Another adult who is "standing in loco parentis" may be notified if neither parent is available. Section 6 of the statute provides an exception to the statute's notification requirement if a medical emergency "requires an immediate abortion." The required 24 hour waiting period is also lifted under Section 7 if the woman has already notified both her parents (or the appropriate adult as provided by Section 4) and they either accompany her to the location where the abortion will be performed or sign notarized statements stating that they have received notice.

A pregnant minor may avoid giving notice to her parents by petitioning on her own or "by next friend" the circuit court in the county where she is living, or the one in which the abortion will be performed, for a judicial waiver of notice under the procedures set out in Section 5 of the Act. These procedures provide that the court "shall appoint a guardian ad litem" for the woman and "shall advise her that she has a right to court appointed counsel and shall provide her with such counsel upon her request." Court proceedings are to be "confidential" and "ensure anonymity."

The circuit court must rule on the petition within 48 hours of receiving the minor's application except if the woman herself requests an extension. The court is directed to waive parental notice if it finds that the woman is mature or notice would not be in the woman's best interests. The court must issue a written opinion stating its findings and decision and must order that "a confidential record of the evidence be maintained." The Act also provides that "an expedited, confidential appeal shall be available, as the Supreme Court provides by rule" if waiver is denied, and directs the Illinois Supreme Court "to promulgate any rules ... necessary to ensure proceedings under this Act are handled in an expeditious and confidential manner."

### C. *Illinois Supreme Court Rule 307*

Section 5 of the Act now incorporates Illinois Supreme Court Rule 307(e). The Rule provides that a woman may appeal a denial of waiver of parental notice by filing a written petition in the Appellate Court. A supporting record must be filed with the petition "which shall include the notice of interlocutory appeal; the pleadings filed in the circuit court, if any; the decision of the circuit court including the specific findings of facts and legal conclusions supporting the decision; and any supporting documents of record the petition may offer." She may file her appeal "using only her initials or a pseudonym."

The petitioner may also file a memorandum supporting her appeal within two days of the circuit court's denial of the waiver. The Rule further provides that "[a]ny respondent that desires to do so may file, with proof of personal service, any responding memorandum within two days following the filing of the petition, supporting record, and any memorandum which the minor ... files and serves on respondents of record." The Appellate Court "may ... order a different schedule or

order that no memoranda be filed, or order that other materials need not be filed." No replies or extensions of time are allowed under the Rule and oral argument "will not be heard." The court must decide the petition within two days after receiving a complete record and any memoranda. Counsel shall be appointed at the woman's request or if the court finds it necessary. The Rule also provides that all records are to be sealed and may be examined only by the woman, her attorney or her guardian ad litem, and "judges, social workers or other individuals whom the court may find necessary to assist in this appeal."

## II.

■■■ A woman's constitutional right to obtain an abortion extends to minors. *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) ("*Bellotti II*"). A State, however, "may have a significant interest promoted by a statute which regulates minors, but would have no legitimate interest in applying that statute to adults." *Zbaraz*, 763 F.2d at 1536. But any such statute may not allow a third party to impose an absolute veto over the woman's decision whether or not to bear a child. *Danforth*, 428 U.S. at 74–5, 96 S.Ct. at 2843–44.

■■■ Statutes such as the Illinois Act, which require notification of both parents, must provide a judicial bypass procedure. *See Hodgson*, 110 S.Ct. 2926; *Bellotti II*, 443 U.S. at 643, 99 S.Ct. at 3048. The alternative procedure must allow her to demonstrate that either she is mature enough to make an independent decision to have an abortion, or even if she lacks sufficient maturity that an abortion would be in her best interests. *Bellotti II*, 443 U.S. at 644, 99 S.Ct. at 3048–49. The procedure must also "assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportu-

nity for an abortion to be obtained." *Id. See also Akron II*, 110 S.Ct. at 2979 (employing *Bellotti II* analysis to review bypass procedure).

Against these standards we previously measured the bypass procedure in the Illinois Act and found that the statute failed to provide a constitutional alternative to parental notification. We now consider whether Supreme Court Rule 307 has cured the waiver procedure's constitutional deficiencies, and whether the Rule itself has imposed any unconstitutional burdens on a minor's right to obtain an abortion.

### A. Confidentiality in the Circuit Court

Rule 307 specifically permits a woman to proceed with her appeal of a denial of waiver of parental notice without disclosing her name, and also provides that appellate records related to a minor's appeal "shall be sealed as confidential" and are "not available to the public." No such "sealing" provision, however, applies when a woman initially files her petition in a circuit court. The statute simply provides that "the proceedings ... shall be confidential and shall ensure the anonymity of the minor."

■■■ We have already held, and the Seventh Circuit has agreed, that general language stating that proceedings "shall be confidential" does not sufficiently ensure that a minor's identity will be withheld from the public. *Zbaraz*, 584 F.Supp. at 1462; 762 F.2d at 1543. *See also American College of Obstetricians and Gynecologists, Pennsylvania Section v. Thornburgh*, 737 F.2d 283, 297 (3rd Cir.1984), *aff'd*, 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986) ("... [T]he alternative judicial procedure ... may not rely solely on generally stated principles of ... confidentiality...."). Rule 307 does not repair this deficiency. Under the Illinois Act, a minor has no right to file her petition in the circuit court using a pseudonym or using solely her initials.[1] *Cf. Planned Parent-*

---

1. Defendants note that Illinois law permits parties to use fictitious names. Ill.Code Civ.Proc. § 2–401(e). This provision, however, does not

guarantee that every minor seeking a waiver may use a fictitious name; it merely provides the opportunity to demonstrate that there is

*hood Association of Kansas City, Missouri v. Ashcroft,* 462 U.S. 476, 479 n. 4, 103 S.Ct. 2517, 2519 n. 4, 76 L.Ed.2d 733 (1983) (minor may file petition using her initials); *Glick v. McKay,* 937 F.2d 434 (9th Cir.1991) (minor may use only her initials on petition). The statute also does not provide that the documents related to the petition are not public records. *Cf. Akron II,* 110 S.Ct. at 2979 (complaint and other documents not public records); *Planned Parenthood Association of the Atlanta Area v. Miller,* 934 F.2d 1462 (11th Cir. 1991) (records sealed at the inception of the minor's case).

Defendants argue that the Illinois statute provides greater safeguards than the Minnesota statute upheld in *Hodgson.* Although the Minnesota statute itself does not specify procedures to assure confidentiality (it contains a general statement that proceedings will be confidential) the statute was not before the Court on a facial challenge. The Minnesota bypass procedures had been operational, and the district court, after 5-week trial, "found that the Minnesota courts have established procedures to assure the minor's anonymity." *Hodgson v. Minnesota,* 853 F.2d 1452, 1458 (8th Cir.1988) (en banc). The district court also determined that as courts followed the bypass procedures "confidentiality had been maintained." 110 S.Ct. at 2940. By contrast, no such procedures are contained in the Illinois Act. Defendant also points to the fact that unlike the Minnesota statute, the Illinois statute permits a minor to file her waiver petition "by next friend." But the "next friend" provision does not relieve the minor of the need to reveal her identity, it merely permits the petition to be completed and filed by another person on the minor's behalf.

■ Thus the Supreme Court's decision in *Hodgson* in no way alters the need for a statute which imposes a parental notification requirement to assure that bypass proceedings—from the moment a petition is filed to the completion of any appeal—are confidential. This protection is absent

from the Illinois Act at the circuit court level. Nor does Rule 307 provide it. The bypass procedure therefore, remains unconstitutional.

### B. *Delay in the Circuit Court*

Plaintiffs argue that the Act as modified by Rule 307 fails to ensure that an appeal following a denial of waiver will be handled expeditiously. They contend that the statute imposes no time limit on the circuit court to issue a written opinion, which must be filed as part of the record on appeal. They specifically note that if a transcript is substituted for a written opinion such delay could be extensive. Although we may accept plaintiffs' contention that, in general, preparation of a transcript may take a significant period of time, we do not read the Act as permitting a circuit court to issue its written ruling beyond the 48 hour period mandated by Section 5(c) merely because the written opinion requirement in Section 5(e) does not repeat this 48 hour limit.

We must examine the language of the statute as a whole rather than as isolated requirements. *See, e.g., Commissioner of Internal Revenue v. Engle,* 464 U.S. 206, 223, 104 S.Ct. 597, 607, 78 L.Ed.2d 420 (1984), *citing, Helvering v. Morgan's, Inc.,* 293 U.S. 121, 126, 55 S.Ct. 60, 62, 79 L.Ed. 232 (1934) (" '[t]he true meaning of a single section of a statute ... cannot be ascertained if it be considered apart from related sections.' "). Section 5(c) requires that the court "reach a decision promptly ... in no case shall the court fail to rule within 48 hours of the time of application." Section 5(e) states that the "court ... shall issue written and specific findings and legal conclusions supporting its decision." We find that these sections read together impose a 48 hour limit not only on the judge's ruling, but also on the judge's issuance of written findings of fact and legal conclusions. Any other reading of these provisions would defeat the clear intention of the statute that the proceedings in the circuit court be complete within 48 hours.

good cause to permit a party to use a fictitious name. In order to comport with constitutional

requirements the Illinois bypass procedure must assure confidentiality.

Plaintiffs did not contend initially that the procedure at the trial court level imposed undue delay, and we do not find that uncertain delay has now been written into the statute by Rule 307's requirement that a trial judge's opinion be filed with any appeal. This is particularly true since a minor must perfect her appeal within two days under the provisions of 307(d)(1), and must at that time file her petition for review along with the record below, which must include the trial judge's opinion.[2] On a facial challenge to the Rule we cannot assume that opinions will not be drafted in time to allow women to appeal any denials of waiver. *See Akron II*, 110 S.Ct. at 2981 ("[A] state may expect that its judges will follow mandated procedural requirements.").

Plaintiffs also note that the statute contains no fail safe provision providing for an automatic waiver if a ruling is not issued in 48 hours. We agree that the inclusion of such a provision in the statute and Rule would clearly be desirable, but we cannot find that the statute is unconstitutional based on the possibility that those charged with implementing the bypass procedure may not follow the law. *See also id.* at 2981 (upholding Ohio's constructive authorization provision noting that the Court "did not require a similar safety net ... in *Ashcroft* ").

Plaintiffs further point out that the statute fails to provide 24 hour a day, 7 day a week access to courts for a minor seeking to obtain a waiver of notice. Again, although continual access to the courts would be preferable, the absence of such a provision itself does not prevent a woman from obtaining an adjudication that is sufficiently expeditious, nor do the plaintiffs cite any authority which mandates unlimited court access.

Accordingly, we cannot conclude that the bypass procedure fails to ensure an expeditious procedure at the circuit court level.

## C. *Appointment of a Guardian Ad Litem*

Plaintiffs challenge the Act's failure to define the role of the guardian ad litem who must be appointed after a minor has filed her waiver petition. In Illinois, a guardian ad litem has a duty to represent the best interests of a ward, which includes making a recommendation to the court based on his or her assessment of the ward's best interests. *In Interest of K.M.B.*, 123 Ill.App.3d 645, 648, 78 Ill.Dec. 917, 919, 462 N.E.2d 1271, 1273 (4th Dist. 1984). Plaintiffs therefore contend that without any limitations in the statute, the guardian may make a recommendation at odds with the minor's wishes, thus interfering with her decision to have an abortion.

The purpose of the bypass hearing is in part to preserve the right of a mature minor independently to make a decision to have an abortion. *Bellotti II*, 443 U.S. at 643, 99 S.Ct. at 3048. If the court determines that she is mature, then a guardian ad litem's assessment is irrelevant and should not interfere with her choice. A guardian ad litem's assessment of the minor's best interests is only relevant if in fact the minor is unable to make an independent decision. Moreover, the circuit court, not the guardian ad litem, is charged with making an independent determination of what would be in the best interest of an immature minor. *See American College of Obstetricians and Gynecologists, Pennsylvania Section v. Thornburgh*, 656 F.Supp. 879, 886 (E.D.Pa.1987) (finding that having an appointed guardian ad litem does not interfere with or preclude a mature minor's decision to have an abortion.). Obviously, we assume that circuit judges will make such independent and objective determinations.

Plaintiffs also argue that a guardian ad litem has a duty to investigate which may threaten the confidentiality of the proceedings. They note too that the Act contains

---

**2.** Rule 307(e) requires that a minor's petition "shall be prepared and filed in accordance with the provision of subparagraph (d)(1)." Subparagraph (d)(1), which applies to appeals of temporary restraining orders, provides in part:

"The petition ... shall be filed in Appellate Court ... within two days of the entry or denial of the temporary restraining order from which review is being sought."

no penalty for breach of confidentiality. But as we have already noted, in the context of a facial challenge we cannot find a statute unconstitutional based on the possibility that the law will not be followed. Clearly, a guardian ad litem would be violating the provisions of the Act by failing to keep the proceedings fully confidential.

■ A guardian ad litem may not substitute his or her judgment for that of a mature minor nor may the guardian breach the strict confidentiality of the bypass proceedings. We therefore cannot find that the appointment of the guardian ad litem threatens the minor's right to have a confidential bypass procedure which focuses solely on her maturity and best interests.[3]

### D. Omitted Administrative Steps

Plaintiffs cite a variety of omitted provisions in the bypass proceedings. They note, for example, that no court has enacted orders identifying which clerk is to receive the woman's petition, which court division will hold the hearing, and how the woman will be informed of the court's ruling. Plaintiffs also point to defendants' request in their petition for a delay in the operation of the Act (in the event that the injunction is lifted) in order to ready the court system as being an admission of the statute's procedural defects.

■ As we previously recognized, "potential difficulties and 'red tape'" in gaining access to the judicial process do not require that a woman be given pre-filing assistance since any possible confusion would not deny the woman an effective opportunity to obtain a judicial bypass. *Zbaraz*, 584 F.Supp. at 1462. Similarly, the Act's failure to specify what clerk in what division of the circuit court will receive a petition or what judge will hear it, do not deny the woman an opportunity to obtain a waiver of the notice requirement. The crucial issue is whether once the woman seeks a judicial bypass there are procedures in place which ensure that she has both a confidential and expeditious alternative to notifying her parents of her intention to obtain an abortion.

■ We do have some concern about the statute's failure to state precisely how the minor will be informed of the court's ruling. *Cf. Akron II*, 110 S.Ct. at 2977 ("The court must render its decision immediately after the conclusion of the hearing."). We have found already that the Act is unconstitutional for failing to assure that the proceedings in the circuit court are confidential. We note that any means by which a court determines a minor will receive notice of the court's decision must be expeditious and must also conform with the need for complete confidentiality in the proceedings.

### E. Appellate Court Proceedings

Plaintiffs also challenge certain provisions of the appellate procedure set out in Rule 307. Plaintiffs' primary objection is that the Rule apparently contemplates an adversarial rather than an ex parte proceeding. The Rule provides that "[a]ny respondent that desires to do so may file, with proof of personal service, any responding memorandum within two days following the filing of the petition."

■ The question immediately arises—who, if anyone, would be a proper respondent? The *Bellotti II* plurality, in mandating that a pregnant minor should be given an alternative procedure to seeking parental approval prior to having an abortion, apparently did not contemplate that such a procedure would be a formal adversarial proceeding. 443 U.S. at 643 n. 22, 99 S.Ct. at 3048 n. 22 ("... [M]uch can be said for employing procedures and a forum less formal than those associated with a court of general jurisdiction."). *See also Akron II,*

---

**3.** The Ohio statute upheld in *Akron II* also contains a provision for the mandatory appointment of a guardian ad litem. *Akron II,* 110 S.Ct. at 2978. *See also Ashcroft,* 462 U.S. at 479 n. 4, 103 S.Ct. at 2519 n. 4 (statute upheld required appointment of guardian ad litem); *Miller,* 934 F.2d at 1468 (upholding mandatory appointment of guardian ad litem). In Ohio, as in Illinois, "[t]he role of guardian ad litem is to investigate the ward's situation and then ask the court to do what the guardian feels is in the ward's best interest." *In re Baby Girl Baxter,* 17 Ohio St.3d 229, 232, 479 N.E.2d 257, 260 (1985).

*supra* (ex parte); *Hodgson, supra* (no provision for adversarial proceeding). Nor would an adversary proceeding be consistent with the purpose or nature of the hearing. The only issues which may be addressed in the bypass procedure, including any appeal, are whether the young woman has sufficient maturity to decide to have an abortion independently or, if she is immature, what would be in her best interests. *Bellotti II,* 443 U.S. at 643–4, 99 S.Ct. at 3048–49; *Akron II,* 110 S.Ct. at 2979. The appellate proceedings must also be confidential. This framework dictates that the only third parties, other than a guardian ad litem or the woman's attorney, may be those witnesses, if any, that the woman herself chooses to present to the court. No interests are properly relevant to the proceedings except those of the pregnant minor.

Defendants contend that the Act expressly provides that a court *must* waive notice if it finds the woman is mature or notice would not be in her best interests and that these issues are the focus under the statute both in the circuit court and in any subsequent appeal. Defendants, however, fail to provide any explanation for the inclusion of references to and procedures for the involvement of a "respondent" if the statute permits only an ex parte proceeding limited to examination of the minor's maturity or best interests. There is no provision for the involvement of an adverse party in the circuit court. If the proceedings are effectively confidential as they must be, no respondent could possibly appear in the case. The only persons having knowledge of the woman's appeal should properly be any guardian ad litem or attorney appointed to assist her and the judge—none of whom can be a "respondent."

■ The involvement of other third parties is also apparently contemplated by Subsection 8 of Rule 307(e). This provision limits access to the appellate records to the minor, her attorney and guardian ad litem and to "judges, social workers or other individuals whom the court may find necessary to assist in this appeal." Defendants

argue that this provision permits the court to allow the minor to supplement the record with the assistance of others. But the Rule expressly states that this provision allows the court on its own to consult unlimited third parties if the court thinks it necessary. Such a provision is inconsistent with the requirement that the bypass procedure remain confidential. More significantly, the Rule does not require that the minor be given notice of any such consultations, nor does it give her the right to reply in the event that "other individuals" consulted by the appellate court recommend affirming the circuit court and denying the petition. Such a procedure does not comport with due process. *See, e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) ("The essential requirements of due process ... are notice and an opportunity to respond.").

Finally, Subsection 5 of the Rule also permits an Appellate Court "if it deems appropriate, [to] order a different schedule, or order that no memoranda be filed, or order that other materials need not be filed." Although the Rule does require the Appellate Court to decide the woman's petition "within two days," the 48 hour clock does not start ticking until the time has expired for the filing of any memoranda. The possibility of uncertain delay then arises from the Rule's allowance of time for "respondents" to file memoranda in opposition to the minor's appeal. While a "respondent" is not permitted to request an extension, the court on its own may extend the two day period in which the "respondent" may file a memorandum. The time frame for such a "different schedule" is completely within the appellate court's discretion. It could run for an indefinite period of time since the 48 hour ruling requirement applies only after the briefing period has expired.

■ In sum, we find that the Act as supplemented by Rule 307 is also unconstitutional by failing to assure (1) that a minor receives an expeditious and confidential appeal of a circuit court denial of a waiver of notice, (2) that such an appeal focuses

solely on her maturity and best interests, and (3) that the appeal proceedings comport with due process.

## III.

■■■■ Defendants have moved pursuant to Fed.R.Civ.P. 60(b) to modify our injunction of the 24 hour waiting period. A court retains jurisdiction to modify or dissolve an injunction. *System Federation No. 91, Railway Employees Department v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961); *Szabo v. U.S. Marine Corporation,* 819 F.2d 714, 771 (7th Cir.1987). Rule 60(b)(5) provides in pertinent part that a party may obtain relief from a judgment if "it is no longer equitable that the judgment should have prospective application." Modification of a final judgment, however, "is extraordinary relief and requires a showing of extraordinary circumstances." *Money Store, Inc. v. Harriscorp Finance, Inc.,* 885 F.2d 369, 372 (7th Cir.1989). The moving party bears the burden of demonstrating that further application of the injunction would be inequitable. *See Stewart v. General Motors, Corp.,* 756 F.2d 1285, 1290 (7th Cir.1985).

■■■■ The Supreme Court has intimated that an intervening opinion from that Court may in some circumstances be a basis to alter continued enforcement of an equitable decree. In *Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976), the Court vacated a district court's decision refusing to modify a desegregation order in part because the injunction was contrary to an intervening decision, *Swann v. Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). *See also System Federation,* 364 U.S. at 650 n. 6, 81 S.Ct. at 372 n. 6 ("There are many cases where a

mere change in decisional law has been held to justify modification of an outstanding injunction.").[4] Generally, given a strong showing that a subsequent decision is directly controlling and that continued application of the injunction would be inequitable, a court may, in its discretion, modify prospective application of the injunction. Moreover, consistent with the eleventh amendment, an injunction against a state official enforcing a state statute may only be given prospective application if there is a continuing violation of the constitution or federal law. *See, e.g., Watkins v. Blinzinger,* 789 F.2d 474, 484 (7th Cir.1986), *cert. denied,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).

At the time we enjoined the Illinois Act, the Supreme Court had not yet directly considered the constitutionality of a parental notification statute which imposed a waiting period. A long line of cases, however, had refused to uphold waiting periods. *See, e.g., Zbaraz,* 763 F.2d at 1536-7 and cases cited therein. Defendants argue that the Supreme Court's decisions in *Hodgson* and *Akron II* are significant changes in controlling decisional law which warrant lifting our injunction of the 24 hour waiting period. As we have discussed at length, the Illinois Supreme Court has failed to promulgate rules which assure a confidential and expeditious alternative to notification of both parents. In *Hodgson,* the court found that a two parent notice statute was unconstitutional without a bypass procedure. Thus, the notice provisions of the statute must remain enjoined until such time as the Act provides a constitutional alternative to notification of both parents. Moreover, even if the statute did provide for an adequate bypass procedure, we agree with the plaintiffs that the deci-

---

**4.** The Seventh Circuit has found that an intervening Supreme Court decision, "even if applicable, was not by itself such a subsequent event as to render inequitable continued application of [an] ... injunction." *De Filippis v. United States,* 567 F.2d 341 (7th Cir.1977). In *De Filippis,* the court affirmed the district court's refusal to modify an injunction of a Marine Corps restriction on wearing short hair wigs to cover long hair based upon an intervening Supreme Court decision, *Kelley v. Johnson,* 425 U.S. 238,

96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). *Kelley* upheld a police department grooming rule similar to the one enjoined in *De Filippis.* But in *De Filippis* the defendant did not appeal the district court's decision, and also failed to demonstrate that continued enforcement of the injunction constituted a "grievous wrong." *Id. See also McKnight v. United States Steel Corp.,* 726 F.2d 333, 336 (7th Cir.1984) (finding that a change in applicable law was not a basis to reinstate a complaint under Rule 60(b)).

sions in *Hodgson* and *Akron II* would not make continued enjoining of the 24 hour waiting period in the Illinois Act inequitable.

A waiting period may provide a pregnant minor the opportunity to consult with her parents after they have been notified of her decision to obtain an abortion. *Hodgson*, 110 S.Ct. at 2944 (Stevens, J.); *See also* 110 S.Ct. at 2969 (Kennedy, J. finding that a waiting period preserves a parent's right to consult with their daughter). However, once a minor's parents are both notified and consent to the abortion, the State has no interest in imposing any delay. Unlike the statutes found constitutional in *Hodgson* and *Akron II*, the Illinois Act imposes significant burdens even on a young woman whose parents, after being notified of her intent to obtain an abortion, give their consent.

The Minnesota and Ohio parental notification statutes permit a woman who has obtained parental consent to avoid a waiting period by simply presenting her parent's written consent to her doctor. *Id.* at 2930 ("[N]otice is mandatory unless … both … parents have consented in writing."); *Akron II*, 110 S.Ct. at 2977 ("[A] physician may perform an abortion on the minor if one of her parents … has consented to the abortion in writing."). In *Hodgson*, Justice Stevens (writing for himself and Justice O'Connor), while finding that a 48 hour waiting period after notifying one parent does not itself obstruct a minor's decision to terminate her pregnancy, noted that "[i]t is significant that the [Minnesota] statute does not impose a waiting period if a substitute *competent* decisionmaker—parent or court—gives affirmative consent to the abortion." 110 S.Ct. at 2944–5 & n. 35. Similarly, in *Planned Parenthood v. Miller, supra,* the Eleventh Circuit, in finding a 24 hour waiting period in the Georgia Parental Notification Act constitutional, emphasized that the statute "authorizes an abortion *immediately* if the parent previously has been notified or believes that consultation with the minor is unnecessary." 934 F.2d at 1475 (emphasis added).[5]

The Illinois Act, by contrast, imposes a mandatory 24 hour waiting period unless the minor provides the notarized written consent of both parents (if both parents are "available" for notification) or both parents accompany their daughter to the location where the abortion will be performed. We have already expressed concern about the burdens imposed by these requirements. As we noted in our earlier opinion, "submission to a notary of an affidavit stating that the parties have been previously notified of the minor's abortion decision may, in many communities, be tantamount to publication of the information in a local newspaper." *Zbaraz,* 584 F.Supp. at 1462. The notary requirement not only breaches the confidentiality of the minor's decision to terminate her pregnancy, but also may create significant scheduling problems. These same scheduling problems are also created by requiring both parents to go with their daughter to the place where the abortion will be performed. As the Seventh Circuit observed, "problems of scheduling, travel, and expense inherent in a waiting period will increase threefold if a minor's parents are required to accompany her to the abortion clinic or to make arrangements to appear before a notary." *Zbaraz,* 763 F.2d at 1538.

Defendants contend that the Illinois statute is more flexible than the Minnesota statute reviewed in *Hodgson* because it provides exceptions to two parent notification if one or both parents are "not unavailable." The "unavailability" provision itself, however, is problematic. Section 4(b) provides: "If neither parent nor the legal guardian is available to the person performing the abortion … within a reason-

---

**5.** The Georgia Parental Notification Act permits an abortion to proceed immediately if the minor furnishes "a statement, signed by a parent, guardian, or person standing in loco parentis … stating that … [they have] been notified that an abortion is to be performed on such minor." The Act alternatively requires a physician to give 24 hours notice to the minor's parent "provided, however, that, if the person so notified indicates that he or she has been previously informed that the minor is seeking an abortion or … he or she clearly expresses that he or she does not wish to consult with the minor, then in either event the abortion may proceed immediately." 934 F.2d at 1467 n. 6.

able time or manner, notice to any adult person standing in loco parentis shall be sufficient." The statute, however, fails to define when a minor's parents are "not available" or what constitutes "in a reasonable time or manner." Moreover, the alternatives to two parent notice provided under the Act do not obviate the need for a parent or person in loco parentis to accompany the minor to where the abortion will be performed or to sign a notarized statement to avoid the waiting period.

Defendants have failed to demonstrate that further application of the injunction against the 24 hour waiting period would be inequitable. The Illinois Act's alternatives to the waiting period are in essence illusory—in many cases complying with the Act's requirements will themselves impose at least a 24 hour or more delay. *Id.* The alternatives to 24 hours notice to both parents provided under the Act are likely to cause unwarranted delay and may breach the minor's entitlement to make a confidential decision to terminate her pregnancy. For these reasons, and because the statute fails to provide a constitutional bypass procedure, continued enjoining of the 24 hour waiting period is not inequitable.

### IV.

■ One final note. We remain concerned by the confusion caused by the Act's failure to permit constructive notice. *See Zbaraz,* 584 F.Supp. at 1466–7. Both the Minnesota and Ohio statutes upheld by the Supreme Court, while requiring a physician to make a reasonable effort to notify the pregnant woman's parents, allow for constructive notification. *Hodgson,* 110 S.Ct. at 2931 n. 3; *Akron II,* 110 S.Ct. at 2990 n. 4. The Illinois Act exposes a physician to possible criminal and civil liability but it fails to limit the amount of "reasonable effort" that must be made in contacting the pregnant woman's parents or to provide an alternative to giving actual notice. Moreover, there is obvious potential for significant delay when a physician is attempting to achieve notice by phone or in person. We therefore continue to believe that a constructive notice provision should be included in the Illinois Act to avoid unnecessary confusion and delay.

### Conclusion

As is apparent from this opinion, we find that the Act as amended by Rule 307 remains constitutionally defective in several regards. We have also noted a number of other respects in which the statute and the Rule are less satisfactory than those of states whose notification laws the Supreme Court has upheld, although not constitutionally defective in those respects. We express the hope that a revised procedure can be adopted which not only satisfies the constitutional requirements but includes provisions dealing with the possible improvements we have noted.

Defendants' motion to modify the existing injunction against the 24 hour notice period is denied. The waiver of notice procedure provided by the statute and Supreme Court Rule 307 is unconstitutional, and we therefore continue the injunction against the defendants from enforcing any provisions of the Illinois Parental Notice of Abortion Act of 1983.